The Honorable Paul B. Snyder
Chapter 11
Location:  Location: Tacoma, Courtroom H
(Vancouver case authorized to be heard in Tacoma
as a Special Set)
Hearing Date:  June 24, 2010
Hearing Time:  10:00 a.m.
Response Date:  June 17, 2010 at 5:00 p.m. PST

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

In re

PACIFIC LIFESTYLE HOMES, INC.,

Debtor.

NO.  08-45328-PBS

**DISCLOSURE STATEMENT FOR DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION (Dated May 24, 2010)**

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION. THE BANKRUPTCY COURT WILL DETERMINE WHETHER THIS DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION AT A HEARING TO CONSIDER APPROVAL OF A DISCLOSURE STATEMENT.  THE TRANSMISSION OF THIS PROPOSED DISCLOSURE STATEMENT IS NOT A SOLICITATION FOR ACCEPTANCE OR REJECTION OF DEBTOR'S PROPOSED PLAN**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Pacific Lifestyle Homes, Inc., a Washington corporation (the "Debtor", "PLHI") submits this Disclosure Statement in connection with its First Amended Plan of Reorganization dated May 24, 2010 (the "Plan"). The purpose of this Disclosure Statement is to set forth information that (i) summarizes the Plan and alternatives to the Plan, (ii) informs creditors and Interest holders of the treatment to be afforded their claims against and equity interests in Debtor under the Plan, (iii) assists creditors entitled to vote in making informed decisions as to whether they should vote to accept or reject the Plan, and (iv) assists the Court in determining whether the Plan complies with the provisions of Chapter 11 of the Bankruptcy Code and should be confirmed. The Plan describes how all claims against and equity interests in Debtor will be resolved, and provides the means by which PLHI will be reorganized under the Bankruptcy Code.

## I.  EXECUTIVE SUMMARY

### A.  Introduction.

On October 16, 2008 (the "Petition Date"), PLHI filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Washington (the "Bankruptcy Court" or the "Court"). Since then, PLHI has managed its properties and affairs as debtor in possession. On May 24, 2010, PLHI filed its Plan of Reorganization with the Bankruptcy Court. On November 25, 2009, PLHI filed the First Amended and Restated Plan of Reorganization. This Disclosure Statement describes certain aspects of the Plan, PLHI's business operations, significant events that occurred in the Bankruptcy Case, and related matters. This Executive Summary is intended solely as a summary of the distribution provisions of the Plan and certain matters relating to the plan confirmation process. For a more complete understanding of the Plan, you should read this Disclosure Statement, the Plan, and the exhibits thereto in their entirety.

DISCLOSURE STATEMENT FOR DEBTOR'S FIRST
AMENDED AND RESTATED PLAN OF
REORGANIZATION – 2
69423-0001/LEGAL17411293.3

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**B.    Definitions and Plan Supremacy.**

All terms defined in the Plan will have the same meanings when used in this Disclosure Statement.  Terms defined in this Disclosure Statement which are also defined in the Plan are solely for convenience and PLHI does not intend to change the definitions of those terms in the Plan.  Furthermore, in the event of any inconsistency between the Plan and this Disclosure Statement, the Plan will control.  The exhibits attached to this Disclosure Statement are incorporated into and are a part of this Disclosure Statement.

**C.    Plan Materials.**

PLHI is mailing the following items to those creditors entitled to vote and certain other parties, either paper copies or a CD-ROM containing the following:

1.    A copy of the "Order (I) Approving Disclosure Statement; (II) Fixing The Record Date; (III) Approving the Notice and Objection Procedures in Respect of Confirmation of the Plan of Reorganization; (IV) Approving Solicitation Packages and Procedures for Distribution Thereof; and (V) Approving the Form of Ballot and Establishing Procedures for Voting on the Plan of Reorganization," as entered by the Bankruptcy Court on June __, 2010 (the "Disclosure Statement Order");

2.    The Notice (I) of Approval of Disclosure Statement, (II) Establishment of Record Date, (III) Hearing on Confirmation of the Plan and Procedures for Objection to Confirmation of the Plan, and (IV) Procedures and Deadline for Voting on the Plan;

3.    This Disclosure Statement as approved by the Court;

4.    The Plan;

5.    A ballot;

6.    A pre-addressed return envelope; and

7.    A letter in support of the Plan from the Committee.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Pursuant to the terms of the Plan, certain Classes of Claims are entitled to vote. Enclosed with this Disclosure Statement are a ballot and a pre-addressed envelope for return of the ballot. If you did not receive a ballot or if your ballot is lost or damaged, please contact Ann Sandvig at Perkins Coie LLP, 1120 N.W. Couch Street, 10th Floor, Portland, OR 97209, by telephone at (503) 727-2000, by fax at (503) 727-2222, or by email at asandvig@perkinscoie.com. PLHI and the Committee believe that confirmation of the Plan is in the best interests of PLHI and its creditors, and that creditors should vote to approve the Plan. You may vote on the Plan by returning the enclosed ballot to the address shown below prior to the Voting Deadline, which is **5:00 p.m. local time in Portland, Oregon on July 27, 2010. Only Ballots received by the Voting Deadline can be counted for purposes of Plan confirmation.**

**D.      The Disclosure Statement Approval**

The Bankruptcy Court will consider approval of this Disclosure Statement in accordance with section 1125(f) of the Bankruptcy Code and Bankruptcy Rule 3017 as containing "adequate information" to enable a hypothetical, reasonable investor typical of holders of Claims against PLHI to make an informed judgment as to whether to accept or reject the Plan at the Confirmation Hearing. All objections to the approval of this Disclosure Statement should be filed on or before **5:00 p.m. on June 17, 2010**. Approval of this Disclosure Statement will not constitute a determination by the Bankruptcy Court as to the fairness or merits of the Plan.

**E.      Voting Procedure**

When deciding whether to vote for or against the Plan, creditors should carefully examine the Plan itself in addition to this Disclosure Statement. The Plan will constitute the

legally binding description of the rights held by the respective parties if the creditors approve the Plan and it is subsequently confirmed by the Bankruptcy Court.

To vote for or against the Plan, creditors entitled to vote must mark the enclosed ballot as directed and mail it in the enclosed envelope to Debtor's counsel as follows:

Perkins Coie LLP
Attention:  Ann Sandvig
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209
Fax:  503-727-2222

**In order to be counted, ballots must be signed and received at the above address by 5:00 p.m. Portland local time on July 27, 2010.  Ballots that are not signed will not be counted for purposes of determining whether the Plan has been accepted.  For more information on the voting and tabulation procedures, please refer to the Disclosure Statement Order.**

**F.      Confirmation of Plan**

The Bankruptcy Court may confirm the Plan if it is approved by creditors holding more than two-thirds in amount and one-half in number of the Claims voted in each impaired Class of Claims under the Plan.

**Objections, if any, to confirmation of the Plan must be filed with the Bankruptcy Court and a copy served on counsel to Debtor and counsel to Committee such that the objection is received on or before 5:00 p.m. on June 17, 2010.  A hearing to consider confirmation of the Plan will be held in the United States Bankruptcy Court for the Western District of Washington, Federal Building, 500 W. 12th, Second Floor, Vancouver, Washington 98660, on August 3, 2010 at 10:00 a.m**.  The confirmation hearing may be adjourned from time to time without further notice except for

the announcement of the adjourned date and time at the hearing on confirmation, or at any adjournment thereof.

## II.    DISCLAIMERS

THIS DISCLOSURE STATEMENT IS NOT THE PLAN.  THIS DISCLOSURE STATEMENT, TOGETHER WITH THE PLAN WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT, SHOULD BE READ COMPLETELY.  FOR THE CONVENIENCE OF CREDITORS, THE PLAN IS SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES AND OTHER STATEMENTS REGARDING THE PLAN ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN ITSELF, WHICH IS CONTROLLING IN THE EVENT OF ANY INCONSISTENCY.  NO REPRESENTATIONS OR ASSURANCES CONCERNING DEBTOR, INCLUDING, WITHOUT LIMITATION, ITS OPERATIONS, THE VALUE OF ITS ASSETS, OR THE FUTURE OPERATIONS OF THE REORGANIZED DEBTOR, ARE AUTHORIZED BY DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.  THIS IS A SOLICITATION BY DEBTOR ONLY.  THE REPRESENTATIONS MADE HEREIN ARE THOSE OF DEBTOR AND NOT OF ITS ATTORNEYS OR ANY OTHER PROFESSIONAL.  PORTIONS OF THIS DISCLOSURE STATEMENT DESCRIBING DEBTOR'S FINANCIAL CONDITION HAVE NOT BEEN SUBJECTED TO AN INDEPENDENT AUDIT, BUT PREPARED FROM INFORMATION COMPILED BY DEBTOR FROM RECORDS MAINTAINED IN THE ORDINARY COURSE OF ITS OPERATIONS.  REASONABLE EFFORTS HAVE BEEN MADE TO ACCURATELY PREPARE ALL FINANCIAL INFORMATION WHICH MAY BE CONTAINED IN THIS DISCLOSURE STATEMENT FROM THE INFORMATION AVAILABLE TO DEBTOR. HOWEVER, AS TO ALL SUCH FINANCIAL INFORMATION, DEBTOR IS UNABLE

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ERROR.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT, LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS LEGAL, BUSINESS OR TAX ADVICE TO HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN DEBTOR. CREDITORS AND INTEREST HOLDERS SHOULD CONSULT THEIR OWN LEGAL COUNSEL OR TAX ADVISOR ON ANY QUESTIONS OR CONCERNS RESPECTING TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN ON THEM.

### III. DEBTOR'S HISTORY AND BUSINESS BACKGROUND

**A. History of PLHI**

PLHI is a Washington corporation headquartered in Vancouver, Washington. PLHI was formed in 1996 and began with just 17 sold homes. As PLHI's sales grew in volume, so did its business structure, going from a single entity to a holding company model with separate corporate entities that were incorporated for purposes of acquiring and then developing each development. Effective on October 15, 2008, each of the separate companies was merged into PLHI.[1]

---

[1] The entities that were merged into PLHI are: Banner Properties, Inc.; Banner Properties of Oregon, Inc.; Brush College Properties, Inc.; Cedar Creek Properties, Inc.; Courtyard at Fairfield, Inc.; Elk Meadows Properties, Inc.; Emerald Vista, Inc.; Fairfield, Inc.; Garrette

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**B.     Business of Debtor.**

　　**1.     Summary Description of the Business.**

One of the largest homebuilders in Southwest Washington and Northern Oregon, PLHI is engaged in the business of developing and selling real estate for residential purposes in Southwest Washington and the Portland metropolitan area and the Salem, Oregon area. PLHI builds single family houses and town homes.

PLHI has earned an outstanding reputation for high quality construction and customer service. PLHI's core business is to acquire real estate, obtain the necessary government permits and approvals required for the property to be platted, either as a single family home or as a legal subdivision, and construct the infrastructure, including the utilities, rights-of-way, sidewalks, street lighting and other improvements that are to be included in the particular subdivision and constructs the residential dwellings on each individual lot. PLHI also constructs homes for owners on land owned by the owners. PLHI offers design services through its design studio to enable customers to help build their dream home.

PLHI has focused its construction efforts on building livable communities and innovative floor plans. PLHI has won numerous awards for its homes and design plans. Many of PLHI's new home communities feature resort amenities such as a clubhouse, outdoor pool, and walking trails.

Pointe, Inc.; KCTL, Inc.; Kelley Creek at Pleasant Valley, Inc.; Lake River Properties, Inc.; Maple Creek Holdings, Inc.; Meriwether Estates, Inc.; Morgan's Vineyard, Inc.; North Pointe Estates, Inc.; Northwest Lease Options, Inc.; Osprey Pointe, Inc.; Pacific Lifestyle Development, Inc.; Pacific Lifestyle Homes, Inc.; PL Realty, Inc.; Platinum One, Inc.; Ponte Cino Properties, Inc.; Ponte Cino Townhome Properties, Inc.; Songbird, Inc.; Sunset Ridge of Washington, Inc.; The Reserve at Cooper Mountain, Inc.; The Reserve at Sunset Ridge Inc.; and Thornton Springs, Inc.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

### 2. Projects.

As of the Petition Date, PLHI had 10 communities under construction, comprising 279 lots in the aggregate. In addition, PLHI had approximately 18 individual lots, some with houses and some raw lands outside of their developments. As of the Petition Date PLHI was working on homes in the following communities and locations:

- Carson Estates            Camas, WA
- Reserve at Sunset Ridge    Washougal, WA
- Osprey Pointe             Ridgefield, WA
- Taverner Ridge            Ridgefield, WA
- Songbird                  Vancouver, WA
- Meriwether Estates        Woodland, WA
- Chandler's Estates        Salem, OR
- Morgan's Vineyard         Lafayette, OR
- Cassini View             Ridgefield, WA
- Ponte Cino               Clackamas, OR

### 3. Products.

PLHI designs and constructs a wide-variety of high quality residential dwellings. It builds single-family houses as well as town homes. In calendar year 2008, the price range of its products was from $207,000 to $641,000, with an average unit price of $376,000.

### 4. Employees.

As of May 11, 2010, PLHI employed 22 fulltime people and 3 part-time people in its business operations. A summary of the number of employees by activity follows:

Administration and Accounting . .       . . . . . . . . . . . . . . . . . . . . 13

Construction Supervision . . . . . . . . . . . . . . . . . . . . . . . . . .5

Sales and Marketing . . . . . . . . . . . . . . . . . . . . . . . . . . .7

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

PLHI is not a party to any collective bargaining agreement, and no labor union or other organization represents any employees. Employee relations are considered to be good and there have been no labor relation problems in PLHI's history.

**5.  Warranties.**

PLHI provides each of its customers with a standardized limited warranty that obligates it to replace or repair, or pay the home buyer the reasonable cost of replacing or repairing, defective plumbing, electrical, mechanical, and structural or other components of a new residential unit. Under its standard warranty agreement, the warranty period is one year from the date the home buyer is given possession of the property. In addition, prior to the Petition Date, PLHI provided a 2-year warranty on major mechanical systems. PLHI continues to provide a 10-year structural warranty. PLHI reserves funds to cover the one-year limited warranty but purchases insurance coverage for the ten year warranty.

**6.  Government Regulation.**

PLHI is subject to various federal, state and local laws, regulations and administrative rules affecting its business. It must comply with laws regulating land use and development, licensing and permitting, equal employment, minimum wages, and the like. PLHI believes that presently it is in compliance with all such laws and requirements.

**C.  Management.**

The following table identifies each executive officer and the director of PLHI as of the date hereof and sets forth the current annual cash compensation to each.

| Name | Age | Position | Annual Cash Compensation |
|------|-----|----------|--------------------------|
| Kevin Wann | 41 | President, Chief Executive Officer | $172,000 |

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**D. Interest Holders.**

PLHI has one class of voting common stock. As of the date hereof, there are 5,000 shares of common stock outstanding. The Wann Family Trust, Fund B directly owns all of the outstanding shares of common stock.

**E. Related Party Transactions.**

Transactions involving insiders or other related parties that PLHI deems material are summarized in this Section.

**1. Insider Guaranties.**

Mr. Wann guaranteed certain of the debt of PLHI. A schedule setting forth the parties to whom guaranties were issued and the amount of exposure under such guaranties is set forth below. Mr. Wann has reached agreement with each of three bank creditors on the resolution of these personal guaranties. The remainder of the debt guaranteed relates to surety bonds. Mr. Wann previously paid out on one guaranty of a surety bond claim and there is currently one surety bond claim pending. No claim has been made against Mr. Wann on his guaranty at this time.

| Guaranteed Party | Nature of Guaranty | Maximum Amount |
|---|---|---|
| Bank of America | Unsecured line of credit | $1,000,000 |
| KeyBank | Unsecured line of credit | $2,000,000 |
| West Coast Bank | Unsecured line of credit | $2,000,000 |
| American C & I (Homes) | Surety Bond | $12,000.00 |
| American C & I (Homes) | Surety Bond | $12,000.00 |
| Travelers (Banner) | Surety Bond | $15,000.00 |
| Travelers(Brush College) | Surety Bond | $15,000.00 |
| Travelers (Claystone) | Surety Bond | $15,000.00 |
| Travelers (Emerald Vista) | Surety Bond | $20,000.00 |
| Travelers (Morgan's Vineyard) | Surety Bond | $15,000.00 |
| Travelers (PLHI) | Surety Bond | $15,000.00 |

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

| | | |
|---|---|---|
| Travelers (Homes) | Surety Bond | $20,000.00 |
| Travelers (Ponte Cino) | Surety Bond | $15,000.00 |
| Travelers (Cooper Mountain) | Surety Bond | $15,000.00 |
| Travelers (Homes) | Surety Bond | $15,000.00 |
| American C & I (Banner) | Surety Bond | $12,000.00 |
| Travelers (Lake River) | Surety Bond | $12,000.00 |
| Travelers (Meriwether) | Surety Bond | $12,000.00 |
| Travelers (PLHI) | Surety Bond | $12,000.00 |
| Travelers (Homes) | Surety Bond | $12,000.00 |
| Travelers (Osprey Pointe) | Surety Bond | $12,000.00 |
| Travelers (Songbird) | Surety Bond | $12,000.00 |
| Travelers (Sunset Ridge) | Surety Bond | $12,000.00 |
| Travelers (Thornton Springs) | Surety Bond | $12,000.00 |
| Travelers (Homes) | Surety Bond | $12,000.00 |
| Travelers (Fairfield) | Surety Bond | $1,279,740.00 |
| Travelers (Sunset Ridge) | Surety Bond | $56,394.00 |
| Travelers (Sunset Ridge) | Surety Bond | $5,959.00 |
| Travelers (Homes) | Surety Bond | $20,000.00 |

### 2.      Interest Holders Avoidance Actions.

Prior to the Petition Date, PLHI was structured as a holding company with various

wholly owned subsidiaries.  These entities in turn did business with other companies directly

or indirectly owned by Mr. and Mrs. Wann.  In connection with the preparation for its

bankruptcy filing PLHI began a detailed analysis of its books, including the transactions between

entities which resulted in a determination that the intercompany transactions were not being recorded

consistently.  PLHI's accountants reviewed the books and journal entries and determined that they

needed to be reclassified.  The reclassification occurred after the Petition Date.  The Committee and

its advisors reviewed this reclassification and the transactions between PLHI and companies owned

or controlled by Mr. and Mrs. Wann prior to the Petition Date to determine whether there were

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

causes of action that could be brought for the benefit of the estate. The parties, in negotiating the treatment of unsecured creditors under the Plan agreed to resolve any such claims against Mr. Wann, Mrs. Wann and any of their affiliates in exchange for a payment of $750,000 to the estate.

### 3. Affiliates.

Exhibit A sets forth the affiliates of PLHI, which are comprised of companies owned directly or indirectly by either Mr. Wann or Mrs. Wann.

## F. Market Conditions.

### 1. Residential Construction - Nationwide.

Home prices in the United States began to move on an upward trend beginning in 1996. The increase in home prices escalated significantly beginning in 2004, a trend that continued in the Portland metropolitan area through 2007 when home prices fell dramatically. Prices thereafter declined until May 2009, when for the first time since July 2006, the S&P/Case-Shiller Home Price Index (the "Index") did not decline. From its peak of 206.52 in July 2006, the index declined to 139.98 in May 2009, a total decline of nearly 33 percent. However, since May 2009, the index has continued to recover. By the beginning of March 2010, the index stood at 144.

Source Data for this analysis is the Case Shiller 20-City composite index, not seasonally adjusted.

### 2. Residential Construction - Portland Metropolitan Area.

Overall, the residential housing market in the Portland Metropolitan Area followed the nationwide trend of growth, followed by decline. However, housing prices peaked in July 2007, which was a full year after the nationwide peak. Based on data from the Index, the Portland Metropolitan Area experienced an overall trend of rising home prices from

DISCLOSURE STATEMENT FOR DEBTOR'S FIRST
AMENDED AND RESTATED PLAN OF
REORGANIZATION – 13
69423-0001/LEGAL17411293.3

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

January 1987 through July 2007.  Housing prices in the Portland area peaked in August 2007.

Beginning in 2008, housing prices began to fall.  While the decline was not as significant as in other markets, the overall price decline in the Portland area during that period was about 21 percent.  Additionally, inventory levels, which were at a low of 2.0 months in March 2006 rose to a high of 19.2 months in January 2009.  Inventory levels have since declined and at the end of March 2010, the total inventory level in Portland was 7.8 months.

**G.    Selected Financial Information.**

The following table sets forth certain selected financial data as of December 31 of the years indicated and for the fiscal years then ended.  For prior years, the financial data was taken from consolidated financial statements which include the accounts of PLHI and its wholly owned subsidiaries.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

| Income Statement Data: | 2009 (Preliminary; Not Reviewed by Outside CPAs) | 2008 (Reviewed Statements) |
|---|---|---|
| Total revenues | $19,762,576 | $53,429,545 |
| Pre-tax operating income (loss) | ($3,998,975) | (29,637,672) |
| Land value decrease | *TBD | **9,491,595[2] |
| | | |
| Balance Sheet Data: | | |
| | | |
| Other assets | 12,347,840 | 12,364,057 |
| Inventories | 24,957,977 | 36,358,436 |
| Total assets | 37,305,817 | 48,722,493 |
| Total liabilities | 43,945,448 | 51,363,153 |
| Interest holders' equity (deficit) | (6,639,631) | (2,640,660) |

## IV.    THE BANKRUPTCY CASE

## A.    Events Leading to Bankruptcy.

In 2008 the housing market changed drastically.  Although there continued to be demand for PLHI's homes and communities, turmoil in the financial and banking industry hurt PLHI.  Available credit for purchasers tightened, severely impairing prospective buyers' ability to purchase homes.  On top of reduced sales, PLHI's secured lenders revalued their collateral and demanded that PLHI to make significant payments to reflect the lower collateral values.  Given the volatile market conditions and lack of available credit, PLHI did not expect the housing market to rebound in the near future.

Because of the market collapse, in 2008 many lenders were looking to exit homebuilder lending and were taking unprecedented actions to terminate their exposure,

[2] Finished Lot Impairment          $7,487,390
Work in Progress Impairment     $708,340
Finished Homes Impairment       $1,295,865
Total Impairment                       $9,491,595

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

regardless of the impact it had on their borrowers. For these reasons it was – and remains – extremely difficult for homebuilders to obtain the financing needed to operate, even when operations have been adjusted to lowered market demand. As a result, PLHI was forced to file this Bankruptcy Case to preserve both the inventory and working capital needed to survive and reorganize as a going concern. PLHI looks to exit this Bankruptcy Case as a smaller operating company that continues a payroll, generates income for employees and many small businesses and pay taxes in a time when these activities are essential to the economy.

**B.      Commencement of Bankruptcy Case.**

PLHI commenced this Bankruptcy Case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 16, 2008. No trustee has been appointed, and PLHI has continued to manage its properties and affairs as debtor in possession pursuant to section 1107 and 1108 of the Bankruptcy Code.

**C.      Official Committee of Unsecured Creditors.**

The Bankruptcy Code provides for the appointment of an official committee of unsecured creditors in a Chapter 11 case to promote the interests of all unsecured creditors. This committee is generally chosen from the 20 largest unsecured creditors and is appointed by the United States trustee. In this Bankruptcy Case, the Official Committee of Unsecured Creditors (the "Committee") was formed on October 28, 2008. The current members of the Committee and their respective representatives are: Milguard Manufacturing Inc., represented by Rikki Carter; Macadam Floor & Design, represented by Brett Casey; Parr Lumber Company, represented by Bobbie Gallup; Western Pacific Building Materials Inc., represented by Donna Winn; Parsons Corp./Parsons RCI, represented by Robert Ledford;

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

and Westside Drywall Inc., represented by Paul Samuelson.  The Committee is represented by John Rizzardi of the law firm of Cairncross & Hemplemann, P.S.

The Committee initially retained Tieman & Associates as its financial advisor, but later replaced that firm with Pivotal Solutions, Inc. The Committee and its advisors have met extensively with representatives of PLHI and reviewed PLHI's financial information and projections. Following these activities on behalf of all unsecured creditors the Committee has endorsed the Plan in a letter that is enclosed with this Disclosure Statement.

**D.     Funding for Postpetition Obligations.**

Since the commencement of this Bankruptcy Case, PLHI has timely paid or performed all of its obligations incurred after the Petition Date.  Its cash has come from three principal sources: (1) bank deposits as of the bankruptcy filing, which totaled $477,553; (2) debtor in possession financing in the amount of $1.7 million from Mr. and Mrs. Wann pursuant to orders dated December 9, 2008 (Doc. No. 251) and March 5, 2010 (Doc. No. 943); and (3) cash collateral of its lenders, Bank of America, KeyBank, and West Coast Bank, to the extent permitted under the orders entered on April 16, 2009 (Doc. Nos. 566, 568 and 565, respectively).

**E.     Postpetition Operations.**

**1.     Cash Collateral**

On the Petition Date, PLHI's business operations were at a standstill.  It had suspended its vertical construction activities in August 2008 and, at the time of the bankruptcy filing, it did not have the ability to sell its real estate inventory in the ordinary course of business because it could not deliver clear title to customers.  Through a series of orders entered after the "first-day" hearing held on October 23, 2008, the Court authorized PLHI on an interim basis to sell its real estate inventory in the ordinary course of business

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

free and clear of liens, and also authorized it to assume its prepetition sales contracts with customers. A final order authorizing PLHI to sell its real estate inventory in the ordinary course of business was entered on November 10, 2008. However, under those orders, PLHI was not permitted to use any of the proceeds from the sale of its inventory as working capital to fund its ongoing operations. In order to obtain authorization to use certain of the sale proceeds, on December 30, 2008, PLHI filed a series of motions seeking authorization to use cash collateral.

Each of the lenders filed objections to the use of their cash collateral. Although PLHI reached agreement with WCB on the terms of the use of cash collateral, both BofA and KeyBank continued their opposition. Hearings on approval of cash collateral were held on February 17, 18 and 20, 2009. Following the hearings, on March 16, 2009 the Bankruptcy Court denied use of cash collateral on the terms requested by PLHI. As a result, on March 31, 2009, PLHI filed renewed motions for the use of cash collateral. As before, although all of the lenders initially objected, PLHI was able to reach agreement with WCB on the use of its cash collateral. No agreement was reached with KeyBank or BofA. A hearing was held on April 13, 2009, at which time KeyBank and PLHI were able to agree on the majority of the terms of the use of cash collateral. At that hearing the Bankruptcy Court approved use of cash collateral as to all three lenders and orders approving the use of cash collateral were entered on April 16, 2009.

### 2. Postpetition Sales

The table below summarizes PLHI's sales of completed homes and its actual closings during the period from the Petition Date, through April, 2010.

DISCLOSURE STATEMENT FOR DEBTOR'S FIRST
AMENDED AND RESTATED PLAN OF
REORGANIZATION – 18
69423-0001/LEGAL17411293.3

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

| | Projected | | Actual | | Difference | |
|---|---|---|---|---|---|---|
| | # Units | $ | # Units | $ | # Units | $ |
| Chandler's Estates II | 14 | $ 3,684,631 | 11 | $ 2,883,746 | (3) | $(800,885) |
| Reserve at Sunset Ridge | 13 | $ 3,701,186 | 12 | $ 3,695,650 | (1) | $ (5,536) |
| Ponte Cino Homes | 6 | $ 2,090,684 | 6 | $ 2,112,802 | - | $ 22,118 |
| Ponte Cino Townhomes | 6 | $ 1,730,322 | 4 | $ 1,171,000 | (2) | $(559,322)[3] |
| Morgan's Vineyard | 14 | $ 4,072,048 | 14 | $ 3,594,232 | - | $(477,816)[4] |
| Meriwether Discovery | 18 | $ 4,441,966 | 2 | $ 470,001 | (16) | $(3,971,965)[5] |
| Meriwether Hillshire | 10 | $ 2,696,568 | 1 | $ 283,400 | (9) | $(2,413,168)[6] |
| Taverner Ridge | 16 | $ 4,993,641 | 12 | $ 3,889,671 | (4) | $(1,103,970) |
| Banner KeyBank | 1 | $ 512,751 | 1 | $ 459,000 | - | $ (53,751) |
| Banner B of A | 15 | $ 5,664,800 | 10 | $ 3,840,742 | (5) | $(1,824,058)[7] |
| Osprey Pointe | 6 | $ 2,394,779 | 3 | $ 1,220,755 | (3) | $(1,174,024)[8] |
| Cassini View | 1 | $ 393,248 | 1 | $ 398,000 | - | $ 4,752 |
| Carson Estates | 5 | $ 1,970,207 | 5 | $ 1,975,800 | - | $ 5,593 |
| Songbird | 10 | $ 3,294,073 | 14 | $ 4,676,118 | 4 | $1,382,046 |
| PLH On Your Lot | 0 | $ - | 12 | $ 3,486,356 | 12 | $3,486,356 |
| | 135 | $41,640,902 | 108 | $34,157,273 | (27) | $(7,483,629) |

[3] The remaining lots given back to KeyBank.

[4] This includes the sales of 2 lots and 12 homes.

[5] The remaining lots were given back to KeyBank.

[6] The remaining lots were given back to KeyBank.

[7] Five lots were given back to BofA.

[8] Three lots were given back to BofA.

DISCLOSURE STATEMENT FOR DEBTOR'S FIRST AMENDED AND RESTATED PLAN OF REORGANIZATION – 19
69423-0001/LEGAL17411293.3

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**Other Important Developments.**

Since the commencement of this Bankruptcy Case, PLHI has improved its business operations, resolved disputed claims asserted against it, and effectuated its business reorganization and financial restructuring so that PLHI can emerge from this bankruptcy case as a viable homebuilding business. A number of case benchmarks are described below.

       **3.      Postpetition Financing.**

Immediately after its filing, PLHI determined that it needed additional working capital to operate its business and to pay bankruptcy-related expenses, so that the business could continue to operate and maintain its value. In particular, without postpetition financing, PLHI would have been unable to pay utility costs, maintenance costs and general overhead. After determining that post petition financing was available only under section 364(c) of the Bankruptcy Code, PLHI's only option remained a loan from PLHI's principal and his wife. Accordingly, on November 7, 2008, PLHI filed a motion seeking approval for it to obtain debtor in possession financing in the amount of $1,700,000 from the Wanns. Interest on the loan accrues at 5.75% per annum. PLHI is required to make monthly interest payments to the Wanns, but is not required to make principal payments. As security for the loan, the Wanns were granted a first priority security interest in all unencumbered assets of the estate (other than avoidance actions) and a second priority security interest in all other assets. The Bankruptcy Court entered an order approving the loan on December 8, 2008. By stipulated order entered on March 5, 2010, the Wanns agreed to extend the maturity date from November 30, 2009 to the earlier to occur of (i) June 30, 2010, (ii) the entry of an order converting this case to one under Chapter 7 of the Bankruptcy Code, (iii) the entry of

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

an order dismissing the case, (iv) the entry of an order appointing a trustee or examiner for PLHI, or (v) the entry of an order confirming a plan of reorganization.

### 4.     Resolution of Oregon Construction Lien Claims.

In 2008, PLHI was unable to meet its obligations to its vendors and other trade creditors.  Many of those creditors hold unpaid claims that arose from performing labor or transporting or furnishing materials or supplies to one of PLHI's project sites prior to the bankruptcy filing.  Some of those creditors asserted statutory liens on PLHI's present and former real estate inventory under Oregon's Construction Lien Law.  In order to provide a procedure for those prepetition construction lien claims to be identified and resolved in an expeditious manner, on April 16, 2009, the Court entered an order establishing procedures for the resolution and payment of prepetition Oregon construction lien claims.  Pursuant to that order, PLHI has resolved all 58 construction lien claims that have been asserted, which includes 47 Oregon lien claims.

### 5.     Haykin Settlement.

On August 5, 2009, a former employee, Julia Haykin, filed a motion for relief from stay to pursue a wage action against PLHI, Mr. Wann and another former employee of PLHI.  Ms. Haykin alleged that she was owed past due commissions and because of the willful failure to pay her when due, she was entitled to double the amount plus attorney fees.  Ms. Haykin asserted a claim against the estate in the amount of $221,460.  The parties agreed to mediate the issue with Bankruptcy Judge Elizabeth Perris on October 12, 2009.  During the mediation the parties settled for a payment from Mr. Wann and an allowed unsecured claim against PLHI of $110,000.  The Bankruptcy Court approved the settlement by order dated November 5, 2009 (Doc. No. 811).

DISCLOSURE STATEMENT FOR DEBTOR'S FIRST
AMENDED AND RESTATED PLAN OF
REORGANIZATION – 21
69423-0001/LEGAL17411293.3

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**6.** **Relief from Stay – KeyBank Meriwether Discovery and Ponte Cino Town homes.**

Under the agreed cash collateral ordered between PLHI and KeyBank, KeyBank was entitled to relief from the automatic stay as to 6 undeveloped lots at Ponte Cino Town homes to KeyBank. The Bankruptcy Court approved a stipulated relief from stay order on October 5, 2009 (Doc. No. 761). To date KeyBank has not foreclosed on this property. PLHI understands that KeyBank wants PLHI to include these lots in the property it has agreed to sell for KeyBank.

On August 31, 2009, KeyBank filed a motion for relief from stay to foreclose on PLHI's remaining undeveloped lots at Meriwether – Discovery. After reviewing the project, PLHI agreed to a stipulated order allowing KeyBank to pursue a non-judicial foreclosure. The Bankruptcy Court approved the stipulated order on October 1, 2009 (Doc. No. 768). To date KeyBank has not foreclosed on this property. PLHI understands that KeyBank wants PLHI to include these lots in the property it has agreed to sell for KeyBank.

**7.** **Sale of Developed Lots to BofA.**

Under the cash collateral ordered between PLHI and BofA, PLHI agreed that it would release its interests in the remaining undeveloped Banner Properties and Osprey Pointe lots through either (a) a deed in lieu of foreclosure, (b) granting BofA relief from the automatic stay, or (c) such other relief as is appropriate and agreed to by the parties. BofA elected to purchase the lots pursuant to a sale under section 363 of the Bankruptcy Code and agreed to credit bid the aggregate debt of $912,610.65, thus eliminating any unsecured deficiency claim that it might have against the estate. PLHI estimated that the unsecured deficiency claim would have been approximately $170,000. An order approving the sale

DISCLOSURE STATEMENT FOR DEBTOR'S FIRST AMENDED AND RESTATED PLAN OF REORGANIZATION – 22
69423-0001/LEGAL17411293.3

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

was entered on February 1, 2010 (Doc. No. 914).  The sale was consummated on February 26, 2010.

### 8.    WCB Relief from Stay to Pursue Deeds in Lieu.

As of the Petition Date there were two undeveloped Banner Properties lots that were collateral for loans from WCB.  PLHI determined that it was not cost effective to build homes on those lots and agreed to grant WCB relief from the automatic stay to exercise its state law remedies against the lots pursuant to Deeds in Lieu of Foreclosure - No Merger. An order approving the sale was entered on February 26, 2010 (Doc. No. 930).  The Deeds in Lieu of Foreclosure - No Merger were executed thereafter.

### 9.    Assumption of Unexpired Leases and Executory Contracts

PLHI was party to leases for storage facilities for construction equipment and supplies.  PLHI elected to assume these leases.  Assumption required no cure payment and was beneficial to the estate.  The Bankruptcy Court approved the assumption by order dated May 13, 2009 (Doc. No. 620).

Additionally, PLHI leases space for its office and design center.  As of the Petition Date, the office space was 12,888 square feet.  PLHI subsequently determined that it did not need that much space and entered into negotiations with its Landlord for the reduction of its space by 3,236 square feet.  Additionally, in connection with the reduction of its lease space and because of its financial condition, PLHI requested a rent reduction and suspension of the company's obligation to pay additional rent, which includes common area maintenance charges and taxes.  The Landlord has agreed to reduce PLHI's monthly rent, which resulted in significant savings.

The Landlord agreed to this request on certain conditions.  The rent reduction (including the suspension of payment of additional rent) applies for the period between May

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1, 2009 and the earlier to occur of confirmation of a plan or July 31, 2010. After that time, the parties have agreed that the rent will be adjusted to a market rate. Additionally, PLHI forfeited its existing security deposit in the amount of $17,210.00, but PLHI was not required to provide a new security deposit and the landlord agreed that it would not have a claim against the estate for any additional unpaid rents.

PLHI filed a motion seeking approval of the lease amendment and assumption on June 1, 2009. No objections to the motion were received and the Bankruptcy Court approved the assumption by order dated June 12, 2009 (Doc. No. 650).

Finally, PLHI sought to assume its obligations under the Asset Protection Program Risk Retention Group, Inc. (the "Program") and the related commercial general liability insurance policy (the "Policy") and to pay all due but unpaid premiums under the Policy or otherwise in connection with the Program. The Program was created by PLHI and several other residential homebuilders to purchase their commercial general liability insurance, which enabled them to better control the availability, terms and conditions of their insurance. In addition, the participants' equity interests allow them to share underwriting profits of the Program. Assumption of the Program and the underlying Policy was beneficial to the estate because it allowed PLHI to continue and maintain its prior investment and provided PLHI with a continued source of insurance coverage. No objections to the motion were received and an order approving the assumption of the Program and the related Policy was entered on April 1, 2010 (Doc. No. 978).

## 10. Settlement with KeyBank

PLHI and KeyBank participated in plan treatment settlement sessions with the Honorable Elizabeth Perris, the first on January 28, 2010 and the second on March 5, 2010. Through this process the parties reached an agreement for KeyBank's plan treatment. An

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

order approving the settlement was entered on April 2, 2010 (Doc No. 980). Under the agreement PLHI agreed to return all real estate collateral except for partially constructed homes to KeyBank and agreed to work with KeyBank to sell those assets to KeyBank pursuant to section a sale under 363 of the Bankruptcy Code. PLHI also returned all of KeyBank's cash except for amounts necessary to pay accrued expenses, set up a warranty reserve and complete construction of the partially constructed homes. To alleviate the harm to the estate, KeyBank agreed to pay PLHI for amounts that would have otherwise been payable under the Cash Collateral Order had PLHI continued construction activities on the KeyBank projects. KeyBank agreed to waive all Secured, Unsecured and Administrative Claims it may have against the estate, including, without limitation, its deficiency claim against the estate in an amount estimated at between $2,250,000 and $6,000,000. Finally, KeyBank agreed that it would support and vote in favor of any plan of reorganization that provides for the treatment of KeyBank as set forth in the settlement agreement.

**11.    Settlement with BofA**

PLHI and BofA participated in two plan treatment settlement sessions with the Honorable Elizabeth Perris, the first on January 29, 2010 and the second on April 5, 2010. Through this process the parties reached an agreement in principal on the terms of BofA's plan treatment. An order approving the settlement was entered on June __, 2010 (Doc. No. ___). Under the Settlement Agreement PLHI and BofA agreed on the amount of BofA's secured and unsecured claims, the interest rate to be paid on the secured claim and the continued use of cash collateral to finish construction at the last remaining BofA project – Songbird. The parties also agreed that BofA would pursue non-judicial foreclosure of the property that is outside of the estate, i.e. the 6 finished Carson Estate Lots, the 2 Sandpines finished lots, and the 48 finished lots at Reserve at Cooper Mountain, and that PLHI would

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

cooperate with those efforts.  Finally, BofA agreed to support and vote in favor of any plan of reorganization that provides for the treatment of BofA as set forth in the settlement agreement.

## V.    ASSETS AND LIABILITIES

### A.    Assets.

PLHI's assets are comprised of current assets and long-term assets.  Current assets consist primarily of cash and receivables that are expected to be collected within a period of one year; inventories and all other assets are included in long-term assets. A brief review of PLHI's assets, by categories used for financial reporting purposes, is set forth below.  For purposes of this Disclosure Statement, unless otherwise noted, inventory values are stated at their fair market value.  For purposes of determining estimated fair market values, lot prices are generally valued at amounts used under the Cash Collateral Order, and construction costs are stated at historical cost, unless otherwise noted.  These adjustments have not been audited or reviewed by a certified public accountant and they might not be in accordance with generally accepted accounting principles.  Accordingly, certain adjustments have been made to PLHI's financial statements.  These adjustments include the write-off of uncollectible receivables and the write-down of inventory to fair value.  These adjustments have not been audited or reviewed by a certified public accountant and they might not be in accordance with generally accepted accounting principles.

### 1.    Current Assets.

Set forth below are PLHI's current assets as of April 30, 2010:

| | |
|---|---|
| Restricted cash | $3,906,805 |
| Unrestricted cash | $2,816,338 |
| Professional deposits | $177,089 |
| Utility deposits | $12,036 |
| Prepaid expenses | $3,760 |

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

| | |
|---|---|
| Earnest Money Deposits | $74,478 |
| Accounts Receivable | $225,522 |
| Total | $7,216,028 |

## 2. Inventories.

PLHI currently owns 64 vacant lots, 20 homes under construction and 5 finished homes. These numbers do not include the KeyBank projects, which will be sold prior to the Effective Date. The summary set forth below shows PLHI's inventory within each of these general categories by project and indicates for each project its estimated value as of April 30, 2010. In each case the values only reflect the value of the real estate, not cash collateral, and are based on PLHI's estimates, which for the lots, are generally based on Cash Collateral Values.

| | Vacant Lots | Homes Under Construction | Completed Homes | Total | Estimated Value |
|---|---|---|---|---|---|
| Chandler's Estates II | 19 | 3 | 1 | 23 | 1,699,675 |
| Songbird | 11 | 5 | 2 | 18 | 2,049,567 |
| Reserve at Sunset Ridge | 19 | 3 | 2 | 24 | 2,087,693 |
| PLHI Owned Properties | 15 | 9 | 0 | 24 | 2,570,873 |
| Totals | 64 | 20 | 5 | 89 | 8,407,808 |

Set forth below is a summary that shows for the WCB and BofA project indicated the estimated bulk (going concern) value and its estimated liquidation value as of July 31, 2010.

| Project | Status | Bulk Value | Liquidation Value |
|---|---|---|---|
| Chandler's Estates II | Homes and platted lots | $1,750,676 | $1,191,675 |
| Reserve at Sunset Ridge | Homes and platted lots | $1,981,697 | $1,350,027 |
| Songbird | Homes and platted lots | $1,827,561 | $1,397,342 |

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**3.      Fixed Assets.**

As of April 30, 2010, the book value of PLHI's model furniture, furnishings and equipment, including leasehold improvements, net of accumulated depreciation, was $67,189.

**B.      Liabilities.**

**1.      Secured Claims.**

PLHI is indebted to various creditors whose claims are secured, in whole or in part, by PLHI's property.  Under the Plan, these claims have been placed in 6 classes.  These secured claims are summarized below.  The categories of secured claims discussed below are for convenience and do not track the classes of claims set forth in the Plan.

**a.      Lenders' Claims**.  PLHI is indebted to three different lenders for borrowed money.  Each lender holds one or more trust deed liens on certain of PLHI's real estate inventory.  These lenders are:

(i)      <u>Bank of America</u>.  BofA holds claims against PLHI based on loans secured by its subdivisions known as Osprey Pointe, Cassini View, and Songbird.  BofA was also secured by properties developed by Banner Properties. The agreed amount of Bank of America's secured claim is $3,438,000 as of April 5, 2010, which will be reduced by payments made to BofA from April 5, 2010 forward.

(ii)      <u>KeyBank</u>.  KeyBank holds claims against PLHI for loans secured by the subdivisions known as Ponte Cino, Morgan's Vineyard, Meriwether Estates (Hillshire and Discovery) and Taverner Ridge.  The debt recorded on PLHI's books as of the Petition Date was $18,950,880.52, which includes interest accrued up to the Petition Date.  As a result of the settlement with KeyBank, KeyBank's remaining secured claim is estimated at $2,538,118 as of April 30, 2010 (without

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

taking into account the value of the lots to be either returned to KeyBank or sold for KeyBank). However, under the settlement agreement, PLHI's only obligation is to turn over all proceeds, or if the Homes do not sell, the Homes, to KeyBank in full satisfaction of the KeyBank Secured Claim. Additionally, KeyBank has agreed to waive any Unsecured Claim it may have against PLHI.

(iii)    <u>West Coast Bank</u>. WCB holds claims against PLHI for a loan secured by the subdivisions known as Chandler's Estate and Sunset Ridge. WCB was also secured by two Banner Properties homes, but has obtained relief from stay and has obtained ownership of those properties pursuant to deeds in lieu of foreclosure. The debt recorded on PLHI's books as of the Petition Date was $8,209,443, which includes interest accrued up to the Petition Date. However, the parties have agreed that WCB's Secured Claim will be fully satisfied by the turn over of all undeveloped lots, most of the cash in the Segregated DIP Account and the proceeds from the WCB Remaining Collateral or the WCB Remaining Collateral if PLHI cannot sell it during the 270-day disposition period, all as more fully set forth in the Plan. Additionally, WCB has agreed to waive any Unsecured Claim it may have against PLHI.

**b.    Oregon Construction Lien Claims**. Vendors of PLHI have asserted 91 statutory liens on PLHI's present and former real estate inventory under Oregon's Construction Lien Law (ORS 87.001 to 87.060 and 87.075 to 87.093). The amount of these statutory lien claims total $1,061,443.09. As of April 30, 2010, there were 2 remaining Oregon claims against property of the estate in the aggregate amount of $16,500.00. PLHI estimates that these claims will be allowed in full with interest.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

c. **Washington Construction Lien Claims**. Vendors of PLHI have asserted 204 statutory liens on PLHI's present and former real estate inventory under Washington's Mechanic Lien law (Chapter 60.04 RCW). The amount of these statutory lien claims total $1,212,101.66. As of April 30, 2010, there were 4 Washington liens asserted against property still owned by PLHI in the aggregate amount of $10,069.64. To the extent they have not already been paid, these lien claims are unsecured because the liens are junior in priority to the trust deed liens of lenders and there is no equity in the properties to which the liens can attach. Accordingly, creditors asserting statutory liens under Washington law will be treated as Unsecured Creditors.

d. **Property Tax Claims**. PLHI's real estate inventory and is subject to statutory liens that secure claims of governmental units for property taxes, assessments, and similar impositions. As of April 30, 2010, the total amount of the unpaid prepetition real property taxes was $30,100. Prepetition personal property taxes in the amount of $548 are also currently due. Property taxes associated with real property being sold to KeyBank or other third party or transferred to West Coast Bank will attach to the real property and be paid when such property is sold to a third party, or as otherwise may be agreed between the taxing authorities and such entities.

2. **Administrative Expense Claims.**

Administrative Expense Claims consist primarily of (a) costs and expenses incurred in connection with the operation of PLHI's business after the Petition Date, (b) claims of professionals who are or were employed at the expense of PLHI's bankruptcy estate, to the extent allowed by the Court, and (c) fees and charges assessed against the bankruptcy estate under 28 U.S.C. § 1930, including quarterly fees payable to the United States trustee. Assuming the Effective Date of the Plan is on or around July 31, 2010, PLHI projects that

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

unpaid Administrative Expense Claims will total approximately $1,459,000, consisting of (i) approximately $1,346,000 in postpetition trade payables and other accrued expenses (including property taxes), (ii) approximately $100,000 owing to professionals, net of amounts provisionally paid through such date pursuant to Court orders, and (iii) $13,000 for United States trustee quarterly fees.

### 3. Priority Claims.

PLHI estimates that the unpaid claims that arose before the Petition Date that are entitled to priority under section 507(a) of the Bankruptcy Code will total less than $7,000. These claims consist of (a) the claims of individuals, to the extent of $2,425 each, arising from the deposit of money in connection with the purchase of homes, for the personal, family, or household use of such individuals, under purchase contracts that have been cancelled or otherwise terminated. There are 5 creditors with deposit claims.

### 4. Customer Home Warranty Claims.

Claims for breach of PLHI's one-year warranty given to buyers of its homes or town homes that were sold prior to the Petition Date are believed by management to be immaterial in amount. Six proofs of claim were timely filed by customers, but certain of them are arguably construction defect claims and not warranty claims. PLHI anticipates filing objections to certain of these claims. PLHI estimates that the total Allowed amount of those claims will not exceed $15,000.

### 5. Other Unsecured Claims.

In addition to those claims described above, a variety of other claims that are not entitled to priority under the Bankruptcy Code have been asserted against PLHI in this case. The categories of unsecured claims discussed below are for convenience and do not track the classes of unsecured claims set forth in the Plan.

DISCLOSURE STATEMENT FOR DEBTOR'S FIRST
AMENDED AND RESTATED PLAN OF
REORGANIZATION – 31
69423-0001/LEGAL17411293.3

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**a. Lender's Claims**. The largest category of unsecured claims consists of those of PLHI's lenders. These claims are based on (i) unsecured lines of credit and letters of credit provided to PLHI, (ii) guaranties of loans made to certain of PLHI's affiliates, and (iii) loans made to PLHI that are secured by real estate inventory, and cash collateral generated by the postpetition sale of completed homes, that is worth less than the unpaid balances owing on those loans. The amounts of these claims can vary significantly depending primarily on whether the calculation is made for the purposes of distributions under the Plan or for the purposes of estimating distributions in a Chapter 7 case. Under the Plan, property is valued on a "going concern" basis, whereas in a Chapter 7 case claims would be liquidated through foreclosure proceedings or in deed-in-lieu of foreclosure transactions at lesser values. KeyBank and WCB waived their right to receive any distributions on account of their unsecured claims under a confirmed plan, but not in a Chapter 7 case. Additionally, PLHI reached agreement with BofA that its unsecured claim would be $3.4 million, which does not include claims for property transferred outside of the estate. PLHI estimates that the total amount of the lenders' unsecured claims in a Chapter 7 case would be approximately $18 million. For the purposes of the Plan, however, the total amount of these claims will be $3.4 million.

**b. Contractors' Unsecured Claims**. PLHI is indebted to various vendors for their performance of labor or from the transportation or furnishing of materials or supplies at one of PLHI's project sites prior to the bankruptcy filing. Although certain of these claims were secured by statutory construction liens, the majority were unsecured. PLHI estimates that the total amount of these unsecured claims (i.e. not secured by liens which have priority over the trust deed liens of lenders) is approximately $3.6 million.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**c.      Homeowner Associations' Claims**.  Courtyard at Fairfield Home Owners' Association has asserted claims against PLHI based on alleged construction defects of $5 million.  PLHI disputes this claim.  This claim may be covered by certain of PLHI's insurance policies and PLHI has agreed to relief from stay to allow the association to proceed against the insurance company, which would be the sole remedy to the association. At the present time, it is difficult for PLHI to estimate the amounts at which this claim will be finally allowed for purposes of distribution under the Plan.

**d.      Other Claims**.  PLHI is also liable on unsecured claims not described in the above categories.  These claims include a $1 million claim filed by Ron Goddu for alleged damages arising from a landslide that occurred on his property and a $550,000 claim in favor of a contractor, Parsons RCI.

## VI.      DESCRIPTION OF THE PLAN

A discussion of the principal provisions of the Plan is set forth below.  The discussion of the Plan which follows is a summary only and is qualified in its entirety by reference to the full text of the Plan itself.  You are urged to read the Plan in full and make a thorough review of its terms in evaluating whether to accept or reject the Plan.  If any inconsistency exists between the summary herein and the Plan, the terms of the Plan control.

**A.      Classification and Treatment of Claims and Equity Interests.**

**1.      Classification Generally.**

The Plan designates Classes of Claims and Equity Interests for purposes of voting on the Plan and making distributions.  All Claims, other than Administrative Expense Claims and Priority Tax Claims, and all Equity Interests are placed in Classes under the Plan.  A Claim is classified in a particular Class only to the extent that the Claim falls within the

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

description of that Class and is classified in one or more other Classes to the extent that any remainder of the Claim falls within the description of such other Classes.

### 2. Unclassified Claims

#### a. Administrative Claims

Administrative Claims are claims incurred by PLHI during the Bankruptcy Case. Each Administrative Claim other than Fee Claims accrued on or before, but unpaid as of, the Effective Date will be paid in full in Cash on the latest of: (i) the Effective Date; (ii) the date on which the Bankruptcy Court enters an order allowing such Administrative Claim; or (iii) the date on which PLHI or Reorganized Debtor, as the case may be, and the holder of such Allowed Administrative Claim otherwise agree in writing; provided, however, that Administrative Claims representing indebtedness or other obligations incurred in the ordinary course of business of PLHI will be paid in the ordinary course of business and in accordance with any terms and conditions of any agreement or order relating thereto. PLHI does not believe that there are any holders of Administrative Claims that are not either Fee Claims or incurred in the ordinary course.

#### b. Professional Fees

Each professional person, whose retention or appointment in the Bankruptcy Case has been approved by the Bankruptcy Court, including counsel retained by PLHI, PLHI's accountants and other advisors, as well as the attorneys and financial advisors retained by the Committee, has a Fee Claim against the estate. Each professional shall file with the Bankruptcy Court and serve on all parties required to receive notice a final fee application within 45 days after the Effective Date. The failure to timely file the fee application as required under the Plan will result in the Fee Claim being forever barred and discharged.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

All Allowed Fee Claims shall be paid by the Reorganized Debtor from Cash from operations or through application of any retainer held by such professional person.

### c. Priority Tax Claims

Each holder of an Allowed Priority Tax Claim will be paid the full amount of its Allowed Priority Tax Claim on the Effective Date. PLHI estimates that the total amount owed to creditors in this Class is $93,000.

### 3. Classified Claims.

A creditor will receive a distribution under the Plan only if such creditor is the holder of an Allowed Claim. Distributions under the Plan are in full satisfaction of all Claims against PLHI. The Plan provides for classification and treatment of all Claims against the estate as follows:

### a. Class 1 Priority Claims

Class 1 is unimpaired. On the latest of: (i) the Effective Date; (ii) ten days after the date a Priority Claim becomes an Allowed Claim; and (iii) the date on which PLHI or the Reorganized Debtor, as the case may be, and the holder of such Allowed Priority Claim otherwise agree in writing, each holder of an Allowed Priority Claim will be entitled to receive Cash in an amount sufficient to render the Allowed Priority Claim unimpaired under section 1124 of the Bankruptcy Code, in full settlement, release and discharge of such Allowed Priority Claim.

### b. Class 2. BofA Secured Claim

Class 2 is impaired by the Plan and BofA is entitled to vote on the Plan. BofA shall receive the treatment described below and more fully in the Plan.

(i)     On the Effective Date, the Reorganized Debtor shall execute and deliver to BofA the BofA Note and the other Amended BofA Loan Documents. The BofA Note shall

DISCLOSURE STATEMENT FOR DEBTOR'S FIRST
AMENDED AND RESTATED PLAN OF
REORGANIZATION – 35
69423-0001/LEGAL17411293.3

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

be in a principal amount of equal to the difference between (1) $3,438,000.00, and (2) all payments made by PLHI to BofA from April 5, 2010 through the Effective Date. Interest shall accrue on the principal balance of the BofA Note at the BofA Interest Rate from the Effective Date until the principal balance is paid in full.

(ii)    The Reorganized Debtor shall make payments to BofA in accordance with the terms of the BofA Settlement Agreement.

(iii)    The BofA Note shall be secured by a first priority trust deed lien on all remaining lots, partially completed homes and Homes at Songbird, and a first priority security interest in the holder's interest in the Segregated DIP Cash. In each case the claims are subject and subordinate only to Claims of governmental units for ad valorem property taxes and similar impositions and Allowed Class 5 or Class 6 Claims, if any, that are secured by liens on such property and that have priority over the liens of BofA. So long as the Reorganized Debtor is not in default of its obligations hereunder to BofA, BofA shall, from time to time on the written request of the Reorganized Debtor, release its lien on lots in Songbird, in each case, upon receipt of a principal payment on the BofA Note equal to the applicable lot release payment as provided for in the BofA Amended Loan Documents.

(iv)    The Reorganized Debtor shall cooperate fully with BofA to the extent necessary to assist in the disposition of the BofA Other Collateral as contemplated by the BofA Settlement Agreement.

### c.    Class 3.  KeyBank Secured Claim

Class 3 is impaired by the Plan and KeyBank is entitled to vote on the Plan. KeyBank shall receive the treatment agreed to by the parties and approved in the settlement agreement and more fully in the Plan. KeyBank shall have a secured claim that is secured by a first priority trust deed lien on the KeyBank WIP, and a first priority security interest in

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

the holder's interest in the Segregated DIP Cash. In each case, the claim is subject and subordinate only to Claims of governmental units for ad valorem property taxes and similar impositions and Allowed Class 5 or Class 6 Claims, if any, that are secured by liens on such property and that have priority over the liens of KeyBank.

### d. Class 4. West Coast Bank Secured Claim

Class 4 is impaired by the Plan and WCB is entitled to vote on the Plan. WCB shall receive the treatment described below and more fully in the Plan.

(i)     On the Effective Date, PLHI will turn over all Segregated DIP Cash except for amounts necessary to (1) complete all existing WCB WIP (including Community Costs) and (2) cover warranty reserve expenses in the amount of $1,500 per house remaining under the one-year warranty, including all Homes sold in the year prior to the Effective Date.

(ii)     On the Effective Date, the Reorganized Debtor shall execute and deliver to WCB the WCB Note, which shall be secured by (1) a first priority trust deed lien on the WCB Remaining Collateral, (2) a first priority security interest in the holder's interest in the remaining Segregated DIP Cash, and (3) the WCB Adequate Protection, in each case, subject and subordinate only to Claims of governmental units for ad valorem property taxes and similar impositions and Allowed Class 5 or Class 6 Claims, if any, that are secured by liens on such property and that have priority over the liens of WCB.

(iii)     After the Effective Date, the Reorganized Debtor shall be responsible for completing all WCB Remaining Collateral as soon as commercially practicable, but in any event no later than four months after the Effective Date as more fully set forth in the Plan.

(iv)     On the Effective Date or as soon thereafter as possible, Reorganized Debtor will transfer the WCB Undeveloped Lots to WCB pursuant to deeds in lieu of foreclosure.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

(v)     On the Effective Date Reorganized Debtor and WCB shall enter into the WCB Takedown Agreement, a copy of which is attached as <u>Exhibit B</u>.  The WCB Takedown Agreement will provide, among other things the terms pursuant to which the Reorganized Debtor will be entitled to take down WCB Undeveloped Lots.  The Reorganized Debtor's right to purchase WCB Undeveloped Lots is subject to WCB's right to sell them to a third party.

(vi)     WCB will waive any Unsecured Claims it may be entitled to assert against PLHI, including any Claim for payment of the unsecured line of credit and shall not participate in any distributions to Class 9.

### e.     Class 5.  Oregon Lien Claims

Class 5 is impaired by the Plan and each holder of a Class 5 Claim is entitled to vote on the Plan.  The Reorganized Debtor shall pay to each holder of an Allowed Class 5 Claim, in Cash from the proceeds of the collateral securing such Claim, the Allowed Amount thereof pursuant to the terms of the Oregon Lien Order.  All Allowed Class 5 Claims shall bear interest at the Plan Interest Rate from the date of perfection of such statutory lien until payment.

### f.     Class 6.  Property Tax Lien Claims

Class 6 is unimpaired and the holders of Class 6 Claims are entitled to vote on the Plan.  The Reorganized Debtor shall pay to each holder of an Allowed Class 6 Claim, in Cash on the Effective Date from the appropriate Segregated DIP Account.  Real Property Tax claims on real property to be transferred by PLHI to one or more of its lenders shall attach to the property to be transferred and be paid on the ultimate disposition of that property.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

### g.    Class 7.  Surety Bond Claims

Class 7 is not impaired by the Plan and the holders of Class 7 Claims are not entitled to vote on the Plan.  The rights of the creditors holding Class 7 Claims will remain unaltered.  Class 7 only includes the claims of those surety bonds that have been assumed and excludes those surety bonds that have been terminated or rejected pursuant to this Plan.

### h.    Class 8.  Small Unsecured Claims

Class 8 is impaired by the Plan and each holder of a Class 8 Claim is entitled to vote on the Plan.  The Reorganized Debtor shall pay to each holder of a Small Unsecured Claim, in Cash, an amount equal to 40 percent of the Allowed Amount thereof paid (i) 50% on the Effective Date and (ii) 50% on the 6 month anniversary of the Effective Date, or (iii) as soon thereafter as the Allowed Amount is determined.

### i.    Class 9.  Other Unsecured Claims.

Each holder of an Unsecured Claim will receive a distribution of 10% of its Allowed Unsecured Claim, which distribution will be paid annually, on the anniversary of the Effective Date for the next five years.  The distributions will be made as follows: (i) 10% on the first anniversary of the Effective Date; (ii) 15% on the second anniversary of the Effective Date, (iii) 20% on the third anniversary of the Effective Date; (iv) 25% on the fourth anniversary of the Effective Date; and (v) 30% on the fifth anniversary of the Effective Date.

### j.    Class 10.  Existing Interests

Class 10 is unimpaired by the Plan and the holder of the Interests of PLHI shall be deemed to accept the Plan.  The Wann Trust, as the current holder of the Interests, shall be entitled to retain the Interests in exchange for the Equity Contribution.

DISCLOSURE STATEMENT FOR DEBTOR'S FIRST
AMENDED AND RESTATED PLAN OF
REORGANIZATION – 39
69423-0001/LEGAL17411293.3

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**B. Plan Funding.**

The Plan will be funded by a combination of PLHI's Cash on hand as of the Effective Date, including all remaining amounts in the Segregated DIP Accounts, the Equity Contribution, the Settlement Payment and Cash that is collected or generated by the Reorganized Debtor after the Effective Date.

**C. Distributions to Creditors.**

The provisions of the Plan that govern distributions to creditors and the resolution of disputed and contingent claims are set forth in Article 8 of the Plan. Certain of those provisions are summarized below.

**1. Distributions Generally.**

Distributions under the Plan will be made on the Effective Date and on each Distribution Date, or, in each case, as soon thereafter as is practicable, as more specifically set forth in the Plan. Distributions to be made by the Reorganized Debtor under the Plan ordinarily will be made by check drawn on a domestic bank. Withholding taxes and other amounts required to be withheld under applicable law will be deducted from distributions. Distributions to creditors pursuant to the Plan ordinarily will be delivered by regular mail, postage prepaid, in an envelope addressed as directed in a request served on the Reorganized Debtor as provided in the Plan, but if no such request is made, at the address shown in PLHI's schedules, as they may from time to time be amended, or, if a different address is stated in a proof of claim duly filed with the Court, to such address.

**2. Undeliverable or Unclaimed Distributions.**

For a period of 180 days after any particular distribution is made pursuant to the Plan, distributions that are unclaimed, including (a) checks that have been returned as undeliverable without a proper forwarding address and (b) checks that were not mailed or

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

delivered because of the absence of a proper address to which to mail or deliver the same, shall be distributed to the holders of Allowed Claims entitled thereto upon presentment to the Reorganized Debtor of satisfactory proof of entitlement. The Reorganized Debtor shall make a reasonable effort to ascertain the correct mailing address from information generally available to the public for each holder of an Allowed Claim whose check or other property cannot be mailed or delivered because of the absence of a proper address or whose check has been returned without a proper forwarding address. On the first day after the expiration of such 180 day period (i) holders of Allowed Claims previously entitled to such undeliverable or unclaimed distribution shall no longer be entitled to such distribution and (ii) such Claims shall be deemed disallowed for all purposes, including any future distributions. All disbursements made under the Plan that remain unclaimed shall become property of the Reorganized Debtor.

**3.      Time Bar for Cashing Distribution Checks.**

The Reorganized Debtor may (but shall not be obligated to) stop payment on any check issued by it in respect of Allowed Claims if such check is not negotiated within 60 days after the date of issuance thereof. Request for reissuance of any check shall be made to the Reorganized Debtor in accordance with the Plan, by the holder of the Allowed Claim to whom such check originally was issued, prior to the expiration of the 180 day period set forth in the Plan. After such date, the holder of any such Claim who has failed to make a timely request for reissuance of such a voided check shall not be entitled to any other or further distribution under this Plan on account of such voided check or such Claim.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

### 4. Limitations on Amending Claims.

Except as otherwise provided in the Plan, after the Confirmation Date, a proof of claim may be amended by the holder of such Claim solely to decrease, but not to increase, the amount of such Claim.

### D. Executory Contracts and Unexpired Leases.

On the Effective Date, all executory contracts and unexpired leases of PLHI not previously rejected and not the subject of a pending motion to reject will be assumed by the Reorganized Debtor, in each case, in accordance with the provisions and requirements of sections 365 and 1123(b)(2) of the Bankruptcy Code. Any monetary amounts that are in default under a contract or a lease that is assumed pursuant to the Plan will be satisfied by a cash payment unless otherwise agreed.

## VII. THE REORGANIZED DEBTOR

### A. Ownership and Management.

### 1. Interest Holders.

The Plan provides that on the Effective Date the current holder of the Interests, the Wann Trust, shall be entitled to retain the Interests in exchange for the Equity Contribution.

### 2. Management.

The Plan provides that upon the occurrence of the Effective Date, existing management will remain in place. PLHI is currently managed by a single board member, Mr. Wann.

The following table identifies each person who is expected to serve as an executive officer of the Reorganized Debtor on the Effective Date and sets forth the initial annual compensation to each. Mr. Wann is the only insider and his annual cash compensation will be $344,000.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

| Name | Age | Position |
|---|---|---|
| Kevin Wann | 41 | President |
| Matthew Lewis | 32 | Designated Broker - Washington |
| Daniel Webb | 48 | Chief Financial Officer |

The Reorganized Debtor's executives will receive benefits that are the same or substantially the same as those to be provided to other employees. These benefits include the group health insurance plan, and the ability to contribute to a 401(k) savings plan.

**B.      Financial Projections.**

PLHI has prepared financial projections for the Reorganized Debtor based on the treatment of PLHI's various claims under the Plan. Attached hereto as <u>Exhibit C</u> are projected balance sheets, income statements and cash flow statements for the Reorganized Debtor as of and for the five fiscal yearly periods beginning August 2010 and ending December, 2015. These projections are based on a number of assumptions. The major assumptions for these projections are included as part of Exhibit C. The Reorganized Debtor's business plan contemplates the acquisition of new projects during the life of the Plan. As to these new projects, it is assumed that (i) the Reorganized Debtor will purchase, beginning in 2010 at sites not yet identified by management, a total of 370 finished lots; (ii) the average purchase price per lot will be $70,000; and (iii) the cost of these new projects will be funded out of corporate cash flow. The financial information in these projected financial statements is presented on a consolidated basis in summary form. PLHI believes that the major assumptions on which these financial projections are based are reasonable and that the projected results are reasonably achievable by the Reorganized Debtor's management team. However, as is the case with all "forward looking" statements, no

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

assurance can be given that the Reorganized Debtor will be able to achieve the projected results. A discussion of the risks attendant to the Reorganized Debtor's performance of its business plan is contained in Section XI. below.

## VIII. VOTING ON THE PLAN

### A. Voting Eligibility.

In general, a holder of a claim or interest may vote to accept or reject a plan if both (1) the claim or interest is "allowed," which means generally that it is not disputed, contingent or unliquidated in amount, and (2) the claim or interest is part of a class that is impaired by the plan. If a creditor or equity interest holder will not receive any distribution under a plan in respect of such claim or interest, the Bankruptcy Code deems such holder to have rejected the plan and provides that the holder is not entitled to vote. On the other hand, if the claim or interest is part of a class that is not impaired, the Bankruptcy Code conclusively presumes that holder of such claim or interest has accepted the plan and provides that the holder is not entitled to vote. Under section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under a plan unless (1) the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder thereof, or (2) notwithstanding any legal right to an accelerated payment of such claim or interest, the plan (a) cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy), (b) reinstates the maturity of such claim or interest as it existed before the default, (c) compensates the holder of such claim or interest for any damages resulting from such holder's reasonable reliance on such legal right to an accelerated payment, and (d) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest. Under the Plan, only the holders of allowed claims (or of disputed claims that are temporarily allowed

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

by the Court for voting purposes) in Classes 2, 3, 4, 5, 8, and 9 are entitled to vote. All other

Classes of claims are not impaired under the Plan and are deemed to have accepted the Plan

without voting.

**B.     Voting Deadline.**

The deadline for submitting completed ballots is 5:00 p.m. (prevailing Pacific Time)

on July 27, 2010 (the "Voting Deadline"). Only those ballots that are actually received by

the Voting Deadline will be counted as either accepting or rejecting the Plan.

**C.     Acceptance By a Class.**

As a condition to confirmation, the Bankruptcy Code requires, among other things,

that (1) at least one class of claims that is impaired under the plan has accepted the plan,

determined without including any acceptance of the plan by any insider, and (2) except

under certain circumstances, each class of claims or interests that is impaired under the plan

accepts the plan. Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by

an impaired class of claims as acceptance by holders of at least two-thirds in dollar amount

and more than one-half in number of claims in that class, but for that purpose counts only

the votes of those creditors who actually vote to accept or reject the plan.

Additionally, if creditors in a Class fail to (i) vote to either accept or reject the Plan

and (ii) object to the Plan, such Class shall be deemed to accept the Plan.

**D.     Voting Procedures.**

**1.     Submission of Ballots.**

A form of ballot is included among the materials that accompany this Disclosure

Statement. All votes to accept or reject the Plan must be cast by properly submitting a duly

completed and executed ballot. Ballots must be delivered to Debtor's counsel as designated

in the ballot at the address or fax number set forth on the ballot form and must be received

DISCLOSURE STATEMENT FOR DEBTOR'S FIRST
AMENDED AND RESTATED PLAN OF
REORGANIZATION – 45
69423-0001/LEGAL17411293.3

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

by the Voting Deadline. The method of delivery of a ballot is at the election and risk of the voting creditor. Please carefully follow the directions contained on the enclosed ballot.

### 2.     Incomplete Ballots.

Any ballot received which is not signed, which does not contain sufficient information to permit the identification of the claimant, or which does not indicate either an acceptance or rejection of the Plan or which indicates both acceptance and rejection of the Plan will be invalid and will not be counted as a vote cast with respect to the Plan.

### 3.     Withdrawal or Change of Votes.

A ballot may be withdrawn by delivering a written notice of withdrawal to Debtor's counsel at any time prior to the Voting Deadline. Thereafter, a withdrawn ballot will not be effective unless approved by the Bankruptcy Court. In order to be valid, a notice of withdrawal must (i) specify the name of the holder who submitted the vote on the Plan to be withdrawn, (ii) contain a description of the Claim to which it relates and (iii) be signed by the holder in the same manner as on the ballot. PLHI expressively reserves the absolute right to contest the validity of any such withdrawals of votes on the Plan. Any creditor who has submitted to Debtor's counsel a properly completed ballot prior to the Voting Deadline may change such vote by submitting to Debtor's counsel prior to the Voting Deadline a subsequent properly completed ballot. In the case where more than one timely, properly completed ballot is received with respect to the same Claim, the ballot that bears the latest date will be counted.

### 4.     Voting Multiple Claims.

Only one form of ballot is provided for voting. Any creditor that holds a Claim in more than one Class or multiple Claims within a Class is required to vote separately with

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

respect to each Claim. Please sign, and return in accordance with the instructions on the ballot form, a separate ballot with respect to each such Claim.

## IX.    CONFIRMATION OF THE PLAN

### A.    Confirmation Hearing.

The Bankruptcy Court will hold a hearing to consider confirmation of the Plan commencing on August 3, 2010, at 10:00 a.m. (prevailing Pacific Time) in the United States Bankruptcy Court for the Western District of Washington, Federal Building, 500 W. 12th, Second Floor, Vancouver, Washington 98660. The confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date and time made at the confirmation hearing.

### B.    Deadline for Objecting to Confirmation.

Any objection to confirmation of the Plan must be in writing, must state with specificity the grounds for any such objections, and must be filed with the Bankruptcy Court on or before July 27, 2010.

### C.    Requirements for Confirmation.

#### 1.    Confirmation Requirements Generally.

The Bankruptcy Court can confirm the Plan only if all the requirements of section 1129 of the Bankruptcy Code are met. Among the requirements for confirmation are that (i) the plan be accepted by all impaired classes of claims and of interests or, if rejected by an impaired class, the plan "does not discriminate unfairly" and is "fair and equitable" as to such class, (ii) the plan is feasible, and (iii) the plan is in the "best interest" of creditors and stockholders that are impaired under the plan.

DISCLOSURE STATEMENT FOR DEBTOR'S FIRST
AMENDED AND RESTATED PLAN OF
REORGANIZATION – 47
69423-0001/LEGAL17411293.3

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## 2. Feasibility.

In connection with confirmation with the Plan, the Bankruptcy Court will have to determine that the confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtor unless such liquidation or reorganization is proposed in the Plan. PLHI believes that the Reorganized Debtor will be able to perform its obligations under the Plan. See Section VII. above.

## 3. Best Interests of Creditors.

Section 1129(a)(7) of the Bankruptcy Code requires that any holder of a claim or interest in an impaired class that votes against a proposed plan must receive under the plan distributions that have a value, as of the effective date of the plan, at least equal to that which the holder would receive if the debtor's assets were liquidated under Chapter 7 of the Bankruptcy Code. To determine what creditors and Interest holders would receive if PLHI were liquidated, the Bankruptcy Court must determine the dollar amount that would be generated from a liquidation of its assets in the context of a hypothetical liquidation. Such determination must take into account the fact that, as to each asset, all claims secured by that asset would have to be paid in full, as would all administrative expenses in the Chapter 7 case and in the original Bankruptcy Case, before the balance of those proceeds would be made available to pay unsecured creditors and Interest holders. To determine if a plan is in the best interest of each impaired class, the present value of the distributions from the proceeds of the hypothetical liquidation of the assets (after subtracting the amount attributable to secured claims and administrative expenses of the bankruptcy case) must be compared with the present value of the consideration offered to each such class under the plan. In addition, the rule of absolute priority of distribution from a debtor's estate must be applied. Under that rule, no junior holder of a claim or equity interest may receive

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

distributions under a plan unless the plan provides that all senior classes will be paid in full or unless all senior classes vote to accept the plan. After consideration of the effect that a Chapter 7 liquidation would have on the ultimate proceeds available for distribution to PLHI's creditors and Interest holders (including (i) the increased cost and expense of liquidation under Chapter 7 arising from fees payable to a Chapter 7 trustee and the attorneys and other professional advisors to such trustee, (ii) the time value of money resulting from what is likely a more protracted proceeding, and (iii) the application of the rule of absolute priority to distributions in a Chapter 7 case), PLHI has determined that confirmation of the Plan will provide each creditor in an impaired Class with a greater recovery than such creditor would receive in a Chapter 7 case concerning PLHI.

PLHI estimates that in a liquidation case under Chapter 7, general unsecured creditors would receive cash distributions totaling approximately $318,866. It is also estimated that in a Chapter 7 case, general unsecured creditors would realize on their claims a total recovery in the approximate amount of 3 cents per. The actual recovery, as a percentage of allowed claims, would depend largely on the size of the pool of the general unsecured claims after the lenders' unsecured deficiency claims are determined and after all disputed claims are finally resolved. A liquidation analysis is attached hereto as Exhibit D. All general unsecured creditors will recover more under the Plan than they would in a Chapter 7 case. The recovery on any particular general unsecured claim, as a percentage of the claim, will depend on how that claim is classified in the Plan. The holders of unsecured claims in Classes 7 (i.e., surety bond claims) will receive payment of the full amounts of such claims, subject to the limitations stated in the Plan. The holders of Small Unsecured Claims in Class 9 (i.e., those of with claims of less than $8,000 or who elect to reduce their claim to $8,000) will receive two lump payments on the Effective Date and on the 6 month

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

anniversary of the Effective Date which payments will equal to 40 percent of their claims. The holders of unsecured claims in Class 9 (i.e., those that do not fall in other Classes) will receive a distribution of 10 cents on the dollar over a 5 year period.

## D. Confirmation Over Dissenting Class.

The Bankruptcy Code permits confirmation of a plan even if it is not accepted by all impaired classes, as long as (a) the plan otherwise satisfies the requirements for confirmation, (b) at least one impaired class of claims has accepted it without taking into consideration the votes of any insiders in such class, and (c) the plan is "fair and equitable" and does not "discriminate unfairly" as to any impaired class that has not accepted the plan. These so-called "cramdown" provisions are set forth in section 1129(b) of the Bankruptcy Code.

### 1. Fair and Equitable.

The Bankruptcy Code establishes different "cramdown" tests for determining whether a plan is "fair and equitable" to dissenting impaired classes of secured creditors, unsecured creditors, and equity interest holders as follows:

#### a. Secured Creditors.

A plan is fair and equitable to a class of secured claims that rejects the plan if the plan provides: (a) that each of the holders of the secured claims included in the rejecting class (i) retains the liens securing its claim to the extent of the allowed amount of such claim, whether the property subject to those liens is retained by the debtor or transferred to another entity, and (ii) receives on account of its secured claim deferred cash payments having a present value, as of the effective date of the plan, at least equal to such holder's interest in the estate's interest in such property; (b) that each of the holders of the secured claims included in the rejecting class realizes the "indubitable equivalent" of its allowed

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

secured claim; or (c) for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing the claims included in the rejecting class, free and clear of such liens with such liens to attach to the proceeds of sale, and the treatment of such liens on proceeds in accordance with clause (a) or (b) of this paragraph.

### b. Unsecured Creditors.

A plan is fair and equitable as to a class of unsecured claims that rejects the plan if the plan provides that: (a) each holder of a claim included in the rejecting class receives or retains under the plan property of a value, as of the effective date of the plan, equal to the amount of its allowed claim; or (b) the holders of claims and interests that are junior to the claims of the rejecting class will not receive or retain any property under the plan.

### c. Holders of Equity Interests.

A plan is fair and equitable as to a class of equity interests that rejects the plan if the plan provides that: (a) each holder of an equity interest included in the rejecting class receives or retains under the plan property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of (i) any fixed liquidation preference to which such holder is entitled, (ii) the fixed redemption price to which such holder is entitled, or (iii) the value of the interest; or (b) the holder of any interest that is junior to the interests of the rejecting class will not receive or retain any property under the plan.

PLHI believes that the Plan and the treatment of all impaired Classes under the Plan satisfy the foregoing requirements for nonconsensual confirmation of the Plan.

### 2. Unfair Discrimination.

A plan of reorganization does not "discriminate unfairly" if a dissenting class is treated substantially equally with respect to other classes similarly situated and no class receives more than it is legally entitled to receive for its claims or interests. PLHI believes

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

that the Plan does not discriminate unfairly against any impaired Class. Under the Plan, most non-priority unsecured claims are divided into five classes. Two of those classes are not impaired by the Plan, and three are impaired by the Plan. The business justification for not treating all non-priority claims in the same manner differs for each class. The surety bond claims in Class 7 are treated as unimpaired because PLHI intends to assume the surety agreements.

The unsecured claims in Class 8 (i.e., those that do not fall in other Classes and are less than $8,000 each or are reduced to $8,000 by election) are separately classified for reasons of administrative convenience as permitted by section 1122(b) of the Bankruptcy Code. PLHI proposes to pay the holders of those claims a cash payment equal to 40 percent of the Allowed Amount thereof paid (a) 50% on the Effective Date and (b) 50% on the 6 month anniversary of the Effective Date on the Effective Date because (i) PLHI's vendor relationships with those creditors are considered valuable rights in that most of the holders of the Class 8 Claims are laborers, materialmen, carriers and suppliers that have helped provide the means for PLHI to produce high-quality homes in an efficient and cost-effective manner, (ii) PLHI wishes to preserve these vendor relationships for the Reorganized Debtor, (iii) the vendor relationships will contribute to the success of the reorganization under the Plan, and (iv) the total amount to be paid on these claims, i.e., $250,000 or less, is relatively small in comparison to the amounts to be distributed under the Plan to the holders of Class 9 Claims.

**E.      Effects of Confirmation.**

      **1.      Vesting of Estate Property.**

As of the Effective Date, the Reorganized Debtor shall be revested with title to all property of its estate, free and clear of all liens, Claims and interests, except to the extent

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

provided in the Plan or in the Confirmation Order. As of the Effective Date, the

Reorganized Debtor may use and dispose and otherwise deal with such property and may

conduct it affairs, in each case, without supervision of the Bankruptcy Court and free of any

restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules, other than those

restrictions expressly imposed by this Plan or the Confirmation Order.

### 2. Discharge.

Except, as otherwise provided in this Plan or in the Confirmation Order, on the

Effective Date, pursuant to section 1141(d) of the Bankruptcy Code, PLHI and the

Reorganized Debtor shall be discharged from all liability on any and all Claims against

PLHI that arose at any time before the Effective Date.

### 3. Exculpation.

Section 11.7 of the Plan provides:

> Neither Debtor nor the Committee, nor any of their respective
> officers, directors, members, representatives or agents who served
> as such during this Bankruptcy Case, shall have or incur any
> liability to any Entity for any act or omission in connection with or
> arising out of the negotiation of this Plan, the pursuit of
> confirmation of this Plan, the pursuit of approval of the Disclosure
> Statement, the consummation of this Plan, the transactions
> contemplated and effectuated by this Plan, the administration of
> this Plan or any other act or omission during the administration of
> the Bankruptcy Case or Debtor's Estate. Notwithstanding the
> foregoing, Claims arising from gross negligence or willful
> misconduct on behalf of Debtor are not waived or released in any
> manner by this Plan. In all respects, Debtor will be entitled to rely
> upon the advice of counsel with respect to its duties and
> responsibilities under the Plan.

### 4. Effect on Insurance Policies.

Section 11.8 of the Plan addresses insurance policies issued to PLHI and the various

agreements related to such policies.

DISCLOSURE STATEMENT FOR DEBTOR'S FIRST
AMENDED AND RESTATED PLAN OF
REORGANIZATION – 53
69423-0001/LEGAL17411293.3

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

# X.     ALTERNATIVES TO THE PLAN

PLHI believes that the Plan affords its creditors the greatest opportunity for realization on its assets and the greatest possible value that could be realized on their claims. PLHI also believes that the Plan is fair and reasonable in its treatment of all constituencies. Possible alternatives to the Plan which might arise if the Plan is rejected or if the Court refuses to confirm the Plan include (i) dismissal of the Bankruptcy Case; (ii) conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code, which would entail the mandatory appointment of a trustee; (iii) submission by PLHI of an alternative plan or the filing by another party in interest of an alternative or competing plan; and (iv) the appointment of a Chapter 11 trustee for the purpose of operating PLHI's business, administering PLHI's assets, and filing an alternative plan.

# XI.     RISK FACTORS

This Disclosure Statement contains forward-looking statements that involve risks and uncertainties. The following discussion is intended to be a non-exclusive summary of certain of those risks and uncertainties. Creditors should consider carefully these risks and are encouraged to supplement this summary with their own analysis and evaluation of the Plan.

The Reorganized Debtor's business plan contemplates the achievement of certain sales goals, pricing levels, and margins on sales. It is, of course, impossible to predict accurately the results of future operations. The homebuilding business is subject to substantial risks. The principal risks relate to the uncertainties in the real estate industry in general and to those in the particular real estate markets in which the Reorganized Debtor will operate, as well as the uncertain state of the consumer mortgage credit markets. If the Reorganized Debtor is unable to achieve the projected results, it may be unable to generate

DISCLOSURE STATEMENT FOR DEBTOR'S FIRST
AMENDED AND RESTATED PLAN OF
REORGANIZATION – 54
69423-0001/LEGAL17411293.3

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

sufficient cash to fund its ongoing operations and perform its obligations to creditors under the Plan. Management believes, however, that its financial projections are based on reasonable assumptions and that the projected results are reasonably achievable.

**Real Estate Market Conditions**. The real estate industry is cyclical and is significantly affected by changes in national and local economic and other conditions, such as employment levels, availability of mortgage financing, interest rates, consumer confidence and demand. Because of the long-term financial commitment involved in purchasing homes, general economic uncertainties tend to result in more caution on the part of home buyers, which tends to result in fewer sales. Such uncertainties could adversely affect the performance of the Reorganized Debtor.

**Project Development Risks**. The initial success of the Reorganized Debtor will depend largely upon its ability to purchase new lots, fund construction of Homes on those lots and market and sell those lots within a reasonable time frame. Because the Reorganized Debtor will be required to fund all phases of the development, there is a risk that the Reorganized Debtor may have insufficient funds to purchase and build out sufficient lots to maintain a competitive advantage within its existing cost structure. The Reorganized Debtor's ability to build and sell completed homes within the projected time frames are subject to events and factors beyond the control of the Reorganized Debtor. Such factors include, among others, local population trends, local employment levels, market conditions, neighborhood values, local economic and social conditions, supply and demand for homes in the target market niches, competition from similar projects, interest rates, real estate tax rates, and governmental fiscal policies.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**Governmental Regulation**.  The homebuilding industry is subject to a variety of federal, state and local statutes, ordinances, rules and regulations.  Such government regulation may result in increased costs of developing projects and building homes.

**Uncertain Economic Conditions**.  The United States economy in general and the states of Oregon and Washington in particular are experiencing a significant downturn.  It is unclear at the present time when the economy will fully recover.  Although PLHI believes that the economy is in the process of stabilizing or soon will stabilize, it is impossible to know whether that belief is true or not.

**Competition**.  The Reorganized Debtor will experience competition from other homebuilders.  Competitors likely will continue attempts to take advantage of PLHI's bankruptcy as a sales tool.

## XII.   FEDERAL TAX CONSEQUENCES OF THE PLAN

**CIRCULAR 230 NOTICE: WE MUST INFORM YOU THAT TO ENSURE COMPLIANCE WITH THE REQUIREMENTS IMPOSED BY THE INTERNAL REVENUE SERVICE, ANY FEDERAL TAX ADVICE CONTAINED IN THIS DOCUMENT RELATING TO FEDERAL TAXES, WAS NOT INTENDED OR WRITTEN TO BE USED OR RELIED UPON, AND IT CANNOT BE USED OR RELIED UPON, FOR THE PURPOSE OF AVOIDING TAX RELATED PENALTIES THAT MAY BE IMPOSED UNDER FEDERAL TAX LAW. UNDER THESE RULES, A TAXPAYER MAY RELY ON PROFESSIONAL ADVICE TO AVOID FEDERAL TAX PENALTIES ONLY IF THAT ADVICE IS REFLECTED IN A COMPREHENSIVE TAX OPINION THAT CONFORMS TO STRINGENT REQUIREMENTS UNDER FEDERAL LAW. THIS DISCUSSION WAS WRITTEN**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

IN CONNECTION WITH THE DEBTOR SOLICITING ACCEPTANCES OF THE PLAN THROUGH THIS DISCLOSURE STATEMENT.

**A.      Scope of Discussion.**

The following discussion summarizes in general terms certain material federal income tax consequences of the implementation of the Plan based upon existing provisions of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), court decisions, and current administrative rulings and practice. This summary does not address the federal income tax consequences of the Plan to holders of priority claims or of secured claims, nor does it address any state, local or foreign tax matters or the federal income tax consequences to certain types of creditors (including financial institutions, life insurance companies, tax exempt organizations and foreign taxpayers) to which special rules may apply. No rulings or opinions have been or will be requested from the Internal Revenue Service with respect to any of the tax aspects of the Plan. PLHI is not making any representations regarding the particular tax consequences of confirmation and consummation of the Plan as to creditors or Interest holders, nor is PLHI or its professionals rendering any form of legal opinion or tax advice as to such tax consequences. The tax laws applicable to corporations in bankruptcy are complex and are subject to significant uncertainties. Each creditor and shareholder is urged to consult his, her or its own tax advisor as to the consequences of the Plan under federal and applicable state, local and foreign tax laws. Accordingly, the following summary of federal income tax consequences of the Plan is for informational purposes only and should not be construed as tax advice.

**B.      Tax Consequences to the Reorganized Debtor.**

PLHI is a corporation that has elected to be treated as an S corporation as defined in IRC Section 1361. As such the debtor is generally not subject to federal income tax.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Instead, debtor's sole shareholder is subject to federal and state income taxes on his personal income tax return on any income or losses generated by the debtor. There is also the possibility that under certain circumstances, the S corporation status of the debtor, because of the various tax consequences of the Plan, could terminate. If this termination were to happen PLHI would then be subject to federal and applicable state and local income taxes on its income and losses as a C corporation.

### 1. Cancellation of Debt and Reduction of Tax Attributes.

In general, absent an exception, a debtor will realize and recognize cancellation of debt ("COD") income upon satisfaction of its outstanding indebtedness for total consideration less than the amount of such indebtedness. The amount of COD income, in general, is the excess of (a) the adjusted issue price of the indebtedness satisfied, over (b) the sum of (x) the amount of cash paid, and (y) the fair market value of any new consideration given in satisfaction of such indebtedness.

A debtor will not, however, be required to include any amount of COD income in gross income if the debtor is under the jurisdiction of a court in a case under Chapter 11 of the Bankruptcy Code and the discharge of debt occurs pursuant to that proceeding. Instead, as a consequence of such exclusion, a debtor must reduce its tax attributes by the amount of COD income that it excluded from gross income under Section 108 of the Internal Revenue Code. In general, tax attributes will be reduced in the following order: (1) net operating losses; (2) general business credits; (3) minimum tax credits; (4) capital loss carry forwards; (5) tax basis in assets; (6) passive activity losses and credits (7) and foreign tax credits. A debtor with COD income may elect first to reduce the basis of its depreciable assets under section 108(b)(5) of the Internal Revenue Code. Because the Plan provides that holders of Allowed Unsecured Claims will receive cash payments on account of their Claims, the

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

amount of COD income, and accordingly the amount of tax attributes required to be reduced, will depend on the amount of those payments. Because all Claims will not be fully paid under the Plan, COD income will be realized by the Reorganized Debtor on the Effective Date of the Plan.

## C. Tax Consequences to Holders of General Unsecured Claims.

Pursuant to the Plan, holders of Allowed Unsecured Claims will receive one or more Cash distributions in full satisfaction of their Claims.

### 1. Gain or Loss.

In connection with the implementation of the Plan, each holder of an Allowed Unsecured Claim generally will recognize gain or loss for federal income tax purposes. The timing and amount of that gain or loss will depend upon a number of factors, including whether the holder reports income as an accrual basis taxpayer or as a cash basis taxpayer, whether the holder will receive multiple distributions pursuant to the Plan and whether the Reorganized Debtor's obligation to make payments will be treated as a new debt obligation for federal income purposes.

In addition, the character of any gain or loss recognized by a creditor as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the creditor, whether the obligation from which the creditor's claim arose constitutes a capital asset in the hands of the creditor, whether the obligation from which the claim arose has been held for more than one year, the allocation of any distributions received between principal and unpaid accrued interest, whether and to what extent the creditor has previously claimed a bad debt deduction, and the extent (if any) to which interest may be imputed where multiple distributions are received.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

# XIII. CONCLUSION AND RECOMMENDATION

PLHI believes that confirmation and implementation of the Plan is preferable to any alternative because it will provide the greatest recoveries to its creditors. For this reason, PLHI urges all creditors entitled to vote on the Plan to accept the Plan.

DATED May 24, 2010.

**PERKINS COIE LLP**

By: /s/ Jeanette L. Thomas
    Steven M. Hedberg, WSBA No. 15140
    SHedberg@perkinscoie.com
    Jeanette L. Thomas, WSBA No. 31378
    JThomas@perkinscoie.com
    1120 N.W. Couch Street, Tenth Floor
    Portland, OR 97209-4128
    Telephone: 503.727.2000
    Facsimile: 503.727.2222

    Brian A. Jennings, WSBA No. 32509
    BJennings@perkinscoie.com
    1201 Third Ave., 48th Fl.
    Seattle, WA 98101
    Telephone: 206.359.3679
    Facsimile: 206.359.4679

Attorneys for Debtor
Pacific Lifestyle Homes, Inc.

DISCLOSURE STATEMENT FOR DEBTOR'S FIRST
AMENDED AND RESTATED PLAN OF
REORGANIZATION – 60
69423-0001/LEGAL17411293.3

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

# EXHIBIT A

## LIST OF AFFILIATES

| | |
|---|---|
| Antelope LLC | Pacific Lifestyle Investments LLC |
| Bremerton LLC | Pacific Lifestyle Mortgage LLC (49% owned by KLW Mortgage Company) |
| Clackamas Hickory, LLC | Quartzite, LLC |
| Clark Investment Property LLC (50% owned by Rhode Island Investments LLC) | Ridgefield East Investments LLC |
| Claystone LLC | Ridgefield Estates LLC |
| Hampton LLC | Ridgefield South Investments LLC (50% owned by Maryland Investments LLC) |
| Jefferson LLC | Ridgefield Walker Investment Property LLC |
| Juneau Investments LLC | Rhode Island Investments LLC |
| Kelly Creek Trunkline, LLC | Sandpines Properties LLC |
| Lansford LLC | Schaad Newberg Property LLC (50% owned by Vermont Investments LLC) |
| Logan Lewis Investments LLC | Sherwood LLC |
| Lynn Management LLC | Stafford LLC |
| Maine Investments LLC | Timberman LLC |
| Maryland Investments LLC | Vermont Investments LLC |
| Massachusetts Investments LLC | Virginia Investments LLC |
| Missouri Investments LLC | Wann Investments LLC |
| Monroe LLC | Washougal Investment Property, LLC |
| Moreland LLC | Weston LLC |
| New Hampshire Investments LLC | WHCO LLC (50% owned by Antelope LLC) |
| Newport LLC | K.L.W. Investment Corp. |
| Nivek, LLC | KLW Mortgage Company |

EXHIBIT A TO DISCLOSURE STATEMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

69423-0001/LEGAL17411293.3

**EXHIBIT B**

**WCB TAKEDOWN AGREEMENT**


[to be provided later]

EXHIBIT B TO DISCLOSURE STATEMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

69423-0001/LEGAL17411293.3

**EXHIBIT C**

**FINANCIAL PROJECTIONS**

See attached.

EXHIBIT C TO DISCLOSURE STATEMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

69423-0001/LEGAL17411293.3

**Pacific Lifestyle Homes, Inc.**
**Consolidated Summary Sheet**

| _Inventory:_ | Projected as of 7/31/2010 | Projected as of 12/31/2010 | Projected as of 12/31/2011 | Projected as of 12/31/2012 | Projected as of 12/31/2013 | Projected as of 12/31/2014 | Projected Total |
|---|---|---|---|---|---|---|---|
| # of Units - year end balances | | | | | | | |
| Taverner Ridge - PLHI Owned | 3 | 3 | 2 | 1 | 1 | - | - |
| Chandler's Estate's I - PLHI Owned | 12 | 12 | 9 | 5 | 2 | - | - |
| Reserve @ SSR (available to Option) | 22 | 17 | 4 | - | - | - | - |
| Chandler's Estate's II (available to option) | 24 | 18 | 6 | - | - | - | - |
| Songbird | 12 | 5 | - | - | - | - | - |
| New Lots (1) | - | 74 | 82 | 90 | 102 | 122 | 122 |
| Total Lots | 73 | 129 | 103 | 96 | 105 | 122 | 122 |
| | | | | | | | |
| Closings - for the year ending | | 66 | 74 | 80 | 84 | 91 | 395 |

(1) New lot purchases are required to maintain inventory levels so the company can remain a going concern (estimated to be slightly over a one-year supply). Purchases are subject to cash availability. Inventory levels are significantly lower than in prior years. If sales absorption exceeds expectations additional lot purchases may be required.

(2) It is assumed sales absorption, prices and costs will remain relatively static during forecast period.

| _Balance Sheet:_ (3) | GL GAAP Balances @ 12/31/2009 | Balances @ After Confirmation | 2010 | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|---|---|---|
| **Assets:** | | | | | | | |
| Cash - Restricted DIP Funds (4) | 5,765,395 | 885,085 | 1,002,968 | - | - | - | - |
| Cash - Unrestricted (5) | 3,360,223 | 1,742,056 | 2,341,200 | 1,458,837 | 2,544,776 | 2,507,949 | 2,563,575 |
| Accounts Receivable | 261,547 | 76,734 | 76,734 | 76,734 | 76,734 | 76,734 | 76,734 |
| Prepaid Expenses | 37,248 | 37,248 | 37,248 | 37,248 | 37,248 | 37,248 | 37,248 |
| Inventory - Work in Process (4) | 8,245,256 | 3,484,814 | 3,701,114 | 3,722,353 | 2,990,106 | 3,460,626 | 3,630,387 |
| Land - Finished Lots (4) | 16,712,720 | 4,184,000 | 5,465,000 | 5,740,000 | 6,300,000 | 7,140,000 | 8,540,000 |
| Investment in Risk Retention Group (Insurance Reserve) (6) | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 |
| Fixed Assets @ Cost (7) | 760,700 | 760,700 | 760,700 | 760,700 | 760,700 | 760,700 | 760,700 |
| Less: Accumulated Depreciation | (659,778) | (720,516) | (760,700) | (760,700) | (760,700) | (760,700) | (760,700) |
| Total Assets ** | 34,783,312 | 10,750,121 | 12,924,264 | 11,335,172 | 12,248,864 | 13,522,557 | 15,147,944 |
| | | | | | | | |
| **Liabilities & Equity:** | | | | | | | |
| Post-petition Accounts Payable - Trades | 708,505 | 910,201 | 1,034,476 | 1,251,822 | 1,257,543 | 1,257,543 | 1,257,544 |
| Pre-petition Accounts Payable - Trades | 3,191,526 | - | - | - | - | - | - |
| Accrued Payroll | 61,306 | 87,247 | 87,247 | 87,247 | 87,247 | 87,247 | 87,247 |
| Accrued Warranty Costs | 145,800 | 174,000 | 174,000 | 174,000 | 174,000 | 174,000 | 174,000 |
| Buyer Earnest Money Payable | 40,700 | 34,275 | 34,275 | 34,275 | 34,275 | 34,275 | 34,275 |
| Payable to Subcontractors & Vendors < $8k (8) | - | 249,718 | 124,859 | - | - | - | - |
| Deferred Income - On Your Lot | - | - | - | 169,200 | 310,200 | 310,200 | 310,200 |
| Payable to Subcontractors & Vendors > $8k (9) | - | 704,172 | 704,172 | 633,755 | 528,129 | 387,294 | 211,252 |
| Loan Payable - Kevin Wann (10) | 1,700,000 | - | - | - | - | - | - |
| Prepetition Payable to BofA (11) | - | 340,000 | 340,000 | 306,000 | 255,000 | 187,000 | 102,000 |
| Due to Officer (12) | 695,758 | - | - | - | - | - | - |
| Debt Balances (13) | 34,330,598 | 2,929,338 | 2,335,899 | - | - | - | - |
| Other Liabilities | 548,750 | 253,750 | 253,750 | 253,750 | 253,750 | 253,750 | 253,750 |
| Total Liabilities | 41,422,943 | 5,682,700 | 5,088,678 | 2,910,049 | 2,900,144 | 2,691,309 | 2,430,268 |
| | | | | | | | |
| Beginning Equity | (2,640,658) | (6,639,631) | (6,639,631) | (6,639,631) | (6,639,631) | (6,639,631) | (6,639,631) |
| Capital Contribution - Kevin Wann (5) | - | 2,650,000 | 4,950,000 | 4,950,000 | 4,950,000 | 4,950,000 | 4,950,000 |
| Retained Earnings - Adjustments @ Confirmation (14) | - | 9,057,051 | 9,057,051 | 9,057,051 | 9,057,051 | 9,057,051 | 9,057,051 |
| Retained Earnings - Plan Period | (3,998,973) | - | 468,166 | 1,057,703 | 1,981,300 | 3,463,828 | 5,350,256 |
| Total Equity | (6,639,631) | 5,067,420 | 7,835,586 | 8,425,123 | 9,348,720 | 10,831,248 | 12,717,676 |
| rounding | | | _1_ | | | | _1_ |
| **Total Liabilities & Equity** | 34,783,312 | 10,750,121 | 12,924,264 | 11,335,172 | 12,248,864 | 13,522,557 | 15,147,944 |

Exhibit C
Page 1 of 4

5/20/2010

1

**Pacific Lifestyle Homes, Inc.**
**Consolidated Summary Sheet**

(3) The Balance Sheet is preliminary and therefore does not include final adjustments for impairment losses, gain on debt forgiveness, and other adjustments that may be required.

The 2009 Balance Sheet is currently being reviewed by outside CPAs.

(4) Assumes DIP segregated cash and vacant lots are returned to WCB and Key Bank. Assumes WCB and PLHI will enter into a takedown agreement, and PLHI will fund construction costs.

Assumes PLH will complete Songbird using BofA's DIP funds to fund construction costs.

(5) Unrestricted cash will include:

(i)   $1.7 million from 2007 tax return ( Wann DIP Loan) converted to equity, as provided in the plan.

(ii) $950k from 2008 federal and Oregon tax returns contributed by K Wann as equity.

(iii) $2.3 million 2009 federal tax return paid in as equity

(iv) $750k from 2008 taxes paid to PLHI by K Wann (Settlement Payment).

(6) Long term investment in insurance retention group.

(7) Book value of office furniture, equipment & fixtures.

(8) Assumes pre-petition trade payables with balances up to $8,000 will be paid at 40%, with 50% of this amount payable at Confirmation and the remaining 50% balance paid 6 months following Confirmation.  The amount includes an

estimate for additional creditors that may opt in to this class. The total estimated payment is $249,718, with $124,859 paid at Confirmation and the other $124,859 paid 6 months after Confirmation.

(9) Assumes pre-petition trade payables with balances more than $8,000 (that do not opt in to smaller Class) will be paid at 10% over 5 years.  The total estimated payment for this Class is $704,172, and the payment schedule is as follows:

(1) One year following Confirmation : $70,417; (2) Two years following Confirmation: $105,626; (3) Three years following Confirmation: $140,834; (4) Four years following Confirmation: $176,043; (5) Five years following Confirmation: $211,252.

(10) Assumes Kevin Wann DIP loan is converted to equity in PLHI.

(11) Unsecured bank debt consists of a $340,000 payment to BofA, paid over 5 years as follows:

(1) One year following Confirmation : $34,000; (2) Two years following Confirmation: $51,000; (3) Three years following Confirmation: $68,000; (4) Four years following Confirmation: $85,000; (5) Five years following Confirmation: $102,000.

(12) Assets & Liabilities exclude net intercompany receivable/payables that have been written off as uncollectible.  As of  Confirmation PLH has a net payable to Kevin Wann in the amount of $695k.

(13) BofA has a secured debt balance of $3,438,000, payable as follows: (1) release price for every closing in the amount of $84,777; (2) balance paid from Segregated DIP funds; (3) and if remaining balance, paid from PLH corporate funds.

Pre-confirmation pay downs are expected to total $508,662, leaving a balance of $2,929,338 at confirmation.

(14) Preliminary adjustments to equity based on writing assets and debt down to current Plan proposed by PLHI.  These amounts may change as the books are finalized.

Exhibit C
Page 2 of 4

5/20/2010

2

**Pacific Lifestyle Homes, Inc.**
**Consolidated Summary Sheet**

| _Income Statement:_ | Projected 5 Mos Ending 12/31/2010 | Projected Period Ending 12/31/2011 | Projected Period Ending 12/31/2012 | Projected Period Ending 12/31/2013 | Projected Period Ending 12/31/2014 | Projected Totals |
|---|---|---|---|---|---|---|
| Revenue: | | | | | | |
| Gross Sales from Homebuilding (15) | 7,393,430 | 18,859,787 | 20,761,885 | 23,360,000 | 25,600,000 | 95,975,102 |
| On Your Lot Revenue (16) | 2,100,000 | 2,800,000 | 2,800,000 | 2,800,000 | 2,800,000 | 13,300,000 |
| Total Revenue | 9,493,430 | 21,659,787 | 23,561,885 | 26,160,000 | 28,400,000 | 109,275,102 |
| | | | | | | |
| Less: Cost of Sales | | | | | | |
| Closing Costs (17) | (243,550) | (604,245) | (628,802) | (700,800) | (768,000) | (2,945,397) |
| Construction Costs (18) | (4,140,837) | (10,369,512) | (11,352,368) | (12,643,600) | (13,856,000) | (52,362,317) |
| Lot Cost (19) | (1,584,439) | (3,964,885) | (4,508,000) | (5,110,000) | (5,600,000) | (20,767,324) |
| On Your Lot Cost (16) | (1,677,000) | (2,236,000) | (2,236,000) | (2,236,000) | (2,236,000) | (10,621,000) |
| Total Cost of Sales | (7,645,826) | (17,174,642) | (18,725,169) | (20,690,400) | (22,460,000) | (86,696,038) |
| | | | | | | |
| Gross Profit - Homebuilding $ | 1,424,604 | 3,921,144 | 4,272,716 | 4,905,600 | 5,376,000 | 19,900,064 |
| Gross Profit - Homebuilding % | 19.3% | 20.8% | 20.6% | 21.0% | 21.0% | 20.7% |
| | | | | | | |
| Gross Profit - On Your Lot $ | 423,000 | 564,000 | 564,000 | 564,000 | 564,000 | 2,679,000 |
| Gross Profit - On Your Lot % | 20.1% | 20.1% | 20.1% | 20.1% | 20.1% | 20.1% |
| | | | | | | |
| Total Gross Profit $ | 1,847,604 | 4,485,144 | 4,836,716 | 5,469,600 | 5,940,000 | 22,579,064 |
| Total Gross Profit % | 19.5% | 20.7% | 20.5% | 20.9% | 20.9% | 20.7% |
| | | | | | | |
| Indirect Costs (20) | (219,950) | (534,480) | (541,980) | (550,980) | (561,480) | (2,408,870) |
| Finance Costs | (58,887) | (37,540) | - | - | - | (96,427) |
| Sales & Marketing (21) | (740,341) | (1,748,707) | (1,796,259) | (1,861,212) | (1,917,212) | (8,063,731) |
| General & Admin. Expenses (22) | (677,700) | (1,626,480) | (1,626,480) | (1,626,480) | (1,626,480) | (7,183,620) |
| | (1,696,877) | (3,947,207) | (3,964,719) | (4,038,672) | (4,105,172) | (17,752,647) |
| | | | | | | |
| Other Income <Expense>: | | | | | | |
| Professional Fees | (100,000) | - | - | - | - | (100,000) |
| Depreciation Expense | (30,061) | - | - | - | - | (30,061) |
| Management Fee Income (23) | 21,500 | 51,600 | 51,600 | 51,600 | 51,600 | 227,900 |
| Post Confirmation 10% Builder Overhead - KeyBank | 426,000 | | | | | 426,000 |
| Pretax Income - Corporate | 468,166 | 589,538 | 923,596 | 1,482,528 | 1,886,428 | 5,350,256 |
| | 4.9% | 2.7% | 3.9% | 5.7% | 6.6% | 4.9% |

(15) Sales absorptions and pricing is assumed to remain level each year.
(16) On Your Lot (OYL) program financed by PLH and/or buyer. Buyer chooses lot, either already owned or newly purchased, PLH constructs home.Assumptions for each OYL includes $350k sales price,
    $279.5k cost (including lot), and a $70.5k gross margin , or 20%.
(17) Closing costs include title, escrow & excise taxes (WA only).
(18) It is assumed construction costs will remain level each year, with no significant increases in trade costs.
(19) Lot Cost is recognized as each home is closed.  Release prices will be paid to the banks with each closing, as appropriate.
(20) Costs include production staff, warranty, supplies and tools.
(21) Costs include marketing & advertising, inside commissions, co-broker (outside) commissions, salaries for sales team, model home expense.
(22) Costs include administrative staff payroll, office rent & maintenance, insurance.
(23) Amount paid to PLH to manage rental properties.

Exhibit C
Page 3 of 4

5/20/2010

3

**Pacific Lifestyle Homes, Inc.**
**Consolidated Summary Sheet**

| _Cash Flow:_ | Projected 5 Mos, Ending 12/31/2010 | Projected Period Ending 12/31/2011 | Projected Period Ending 12/31/2012 | Projected Period Ending 12/31/2013 | Projected Period Ending 12/31/2014 | Projected Totals |
|---|---|---|---|---|---|---|
| Net Income | 468,166 | 589,538 | 923,596 | 1,482,528 | 1,886,428 | 5,350,256 |
| | | | | | | |
| Adjustments to Net Income: | | | | | | |
| Sources of Cash: | | | | | | |
| Cash (Contributions) - Kevin Wann (note 5 above) | 4,950,000 | - | - | - | - | 4,950,000 |
| New Cash - Kevin Wann Settlement Payment (note 5 above) | 750,000 | - | - | - | - | 750,000 |
| Sale of PLH Unencumbered Lots (24) | - | 193,000 | 244,000 | 153,000 | 142,000 | 732,000 |
| Add back GAAP Construction Costs from P&L | 4,140,837 | 10,369,512 | 11,352,368 | 12,643,600 | 13,856,000 | 52,362,317 |
| Add back GAAP Lot Cost from P&L | 1,584,439 | 3,964,885 | 4,508,000 | 5,110,000 | 5,600,000 | 20,767,324 |
| Add back GAAP On Your Lot Cost from P&L (note 16 above) | 1,677,000 | 2,236,000 | 2,236,000 | 2,236,000 | 2,236,000 | 10,621,000 |
| Add On Your Lot Cash Flow (PLH Share of Buyer Financed Draws) (note 16) | 14,100 | 141,000 | 141,000 | 141,000 | 141,000 | 578,100 |
| Depreciation Expense | 30,061 | - | - | - | - | 30,061 |
| Total Sources | 13,146,437 | 16,904,397 | 18,481,368 | 20,283,600 | 21,975,000 | 90,790,802 |
| | | | | | | |
| Uses of Cash: | | | | | | |
| Construction Costs | (4,800,336) | (11,245,136) | (10,717,400) | (13,267,120) | (14,167,760) | (54,197,752) |
| Lot Release Prices | (1,164,439) | (1,724,885) | (518,000) | - | - | (3,407,324) |
| Cash Purchase & Development - Lots | (5,600,000) | (2,800,000) | (4,550,000) | (5,950,000) | (7,000,000) | (25,900,000) |
| On Your Lot Costs - PLH Funded | (774,400) | (1,677,000) | (1,677,000) | (1,677,000) | (1,677,000) | (7,482,400) |
| GAAP Revenue from Buyer Financed On Your Lot Sales | (350,000) | (700,000) | (700,000) | (700,000) | (700,000) | (3,150,000) |
| Return of Pre-petition Buyer Earnest Money Deposits | (6,425) | - | - | - | - | (6,425) |
| Pre-Petition Warranty Claims | (15,000) | - | - | - | - | (15,000) |
| Payments to Unsecured Creditor - BofA | - | (34,000) | (51,000) | (68,000) | (85,000) | (238,000) |
| Payments to Subs & Vendors < $8k (including those that opt in) | (124,859) | (124,859) | - | - | - | (249,718) |
| Payments to Subs & Vendors > $8k | - | (70,417) | (105,626) | (140,834) | (176,043) | (492,920) |
| Payment of Accrued Expenses | (280,000) | - | - | - | - | (280,000) |
| Total Uses | (13,115,459) | (18,376,297) | (18,319,025) | (21,802,954) | (23,805,803) | (95,419,539) |
| | | | | | | |
| Cash Flow | 499,144 | (882,363) | 1,085,939 | (36,826) | 55,625 | 721,519 |
| | | | | | | |
| Beginning Cash Balance (Corporate, excludes DIP Funds) | 1,842,056 | 2,341,200 | 1,458,837 | 2,544,776 | 2,507,949 | 1,842,056 |
| Activity for the Period | 499,144 | (882,363) | 1,085,939 | (36,826) | 55,625 | 721,519 |
| rounding | - | - | - | - | - | - |
| Ending Cash Balance (Corporate, excludes DIP Funds) | 2,341,200 | 1,458,837 | 2,544,776 | 2,507,949 | 2,563,575 | 2,563,575 |

(24) Assumes at confirmation that PLH will own 15 unencumbered lots, consisting of 3 Taverner lots and 12 Chandler Estates lots.

Exhibit C
Page 4 of 4

5/20/2010

4

**EXHIBIT D**

**LIQUIDATION ANALYSIS**

See attached.

EXHIBIT D TO DISCLOSURE STATEMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**Pacific Lifestyle Homes, Inc.**
**Liquidation Analysis**
**Projected to July 31, 2010**

| Assets: | Liquidation Value |
|---|---|
| Cash - Restricted DIP Funds (BofA, Songbird) | 885,085 |
| Cash - B of A Restricted Reserve Funds (10% of outstanding costs) | 197,763 |
| Cash - Key Bank Restricted Reserve Funds (10% of outstanding costs) | 181,243 |
| Lots - West Coast Bank 10% Restricted Reserve (7 Chandler Estate's Lots at $30,600 ea.) | 214,200 |
| Cash - Unrestricted Corporate Cash | 1,463,050 |
| Cash - Restricted Post Petition Loan from Kevin Wann | 1,700,000 |
| Accounts Receivable (liquidation value is 60% of reorganization value) | 46,040 |
| Inventory - Work in Process (Songbird-BofA; Reserve at Sunset Ridge , Chandler's Estates-WCB) | 911,774 |
| Land - Finished Lots (12 Songbird lots at $40,385 liquidation value) | 484,620 |
| Inventory - unencumbered lots (3 taverner lots at $39,545; 5 Chandler Estates lots at $30,600/lot, less 15% liquidation costs) | 230,890 |
| Investment in Risk Retention Group (Insurance Reserve) | 50,000 |
| Fixed Assets - net of accumulated depreciation. | 25,000 |
| Avoidance Actions (Settlement Payment from K & N Wann $500k liquidation payment; $750k reorganization payment) | 500,000 |
| Total Assets | 6,889,666 |

| Liabilities: | |
|---|---|
| Accounts Payable - Trades | 910,201 |
| Accrued Payroll | 87,247 |
| Accrued Warranty Costs (warranty would cost significantly more under a liquidation as the homes would need to be serviced by an outside company, and therefore would not have the efficiencies and economies of scale that PLHI's warranty department has.) | 360,000 |
| Accrued Excise Taxes (prepetition amount due to State of Washington) | 93,000 |
| Accrued Real Estate Taxes (includes prepetition and post petition amounts due) | 155,000 |
| Buyer Earnest Money Payable | 6,425 |
| Payable to Banks -Cash - DIP Funds | 885,085 |
| Payable to Banks - WIP | 911,774 |
| Payable to Banks -Lots | 484,620 |
| Cash - B of A Restricted Reserve Funds (10%) - back to bank if Chapter 7 | 197,763 |
| Cash - Key Bank Restricted Reserve Funds (10%) - back to bank if Chapter 7 | 181,243 |
| Lots - West Coast Bank 10% Restricted Reserve (Lots) - to bank if Chapter 7 | 214,200 |
| Payable - Kevin Wann Loan | 1,700,000 |
| Chapter 11 Professional Fees | 100,000 |
| Chapter 7 Liquidation Administration Costs | 184,241 |
| Chapter 7 Professional Fees | 100,000 |
| Total Liabilities | 6,570,799 |
| Balance | 318,866 |

**Pacific Lifestyle Homes**
**Plan of Reorganization**
**Unsecured Claims Recovery Analysis**

|  | Liquidation | Reorganization |
|---|---|---|
| **Payments to Unsecured Creditors** |  |  |
| Subs & Vendors < $8K | $21,150 | $249,718 |
| Subs & Vendors > $8K | 82,739 | 704,171 |
| West Coast Bank (1) | 38,775 | 0 |
| Key Bank (1) | 78,724 | 0 |
| Bank of America | 97,477 | 340,000 |
| Total | $318,866 | $1,293,889 |
|  |  |  |
| **Unsecured Claims** |  |  |
| Subs & Vendors < $8K | $1,800,040 | $1,800,040 |
| Subs & Vendors > $8K | 7,041,717 | 7,041,717 |
| West Coast Bank (1) | 3,300,000 | 0 |
| Key Bank (1) | 6,700,000 | 0 |
| Bank of America | 8,296,000 | 3,400,000 |
| Total | $27,137,757 | $12,241,757 |
|  |  |  |
| **Recovery on Unsecured Claims** |  |  |
| Subs & Vendors < $8K | $0.01 | $0.40 |
| Subs & Vendors > $8K | $0.01 | $0.10 |
| West Coast Bank (1) | $0.01 | - |
| Key Bank (1) | $0.01 | - |
| Bank of America | $0.01 | $0.10 |

(1) Deficiencies were waived as part of the settlement agreements with West
Coast Bank and KeyBank.